[No. 6720. Decided September 28, 1907.]

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS C. JOHNSON, *Appellant*.[1]

APPEAL—ASSIGNMENT OF ERRORS. A general assignment of error as to the admission of evidence is insufficient, where no reference is made to any particular evidence and no argument made thereon.

TRIAL—INSTRUCTIONS—REQUESTS. Requested instructions are properly refused, if faulty, inapplicable, or covered by the general charge.

HOMICIDE—MANSLAUGHTER—SELF-DEFENSE—JUSTIFICATION FOR USE OF WEAPON—EVIDENCE—SUFFICIENCY. The evidence is sufficient to sustain a conviction for manslaughter, where it appears from the testimony of the defendant that he was attacked by the deceased, who was unarmed and a much smaller man than himself, that he might have avoided the attack after the altercation commenced by shutting a door and keeping deceased out of his room, which he failed to do, but admitted him to the room, and in the encounter that ensued used an open knife upon the deceased, stabbing him while pushing him out of the room; whether defendant was justified in using a knife being a question for the jury.

Appeal from a judgment of the superior court for Spokane county, Gilliam, J., entered September 21, 1906, upon a trial and conviction of manslaughter. Affirmed.

*A. C. Shaw*, for appellant.

*Richard M. Barnhart, Fred C. Pugh*, and *A. J. Laughon*, for respondent.

ROOT, J.—On the night of June 7, 1906, in his room at the Rainier hotel, in Spokane, the defendant stabbed one Tuttle with a knife, inflicting injuries from which the latter died a few days thereafter. Defendant was tried upon an information charging murder in the second degree, and convicted of manslaughter. From a judgment and sentence thereupon, he appeals to this court.

[1]Reported in 91 Pac. 949.

There appears to have been no witness to the altercation between defendant and decedent, other than the parties themselves. No statement of the decedent was used upon the trial. The defendant's account of the occurrence is about as follows: He says that he had gone to bed early, suffering from neuralgia; that on four occasions he had been aroused from his sleep by the noise of people walking or talking in the hall of the hotel; that about 11:30, having been awakened by the voices of a man and woman laughing and talking in the hallway, and believing the woman to be a chambermaid named "Lizzie," he went to the door of his room with the intention of calling to her to stop the noise in the hallway, and also with the idea of requesting her to go to her mother's room and bring some liniment such as he had theretofore used. Upon reaching the door, he looked in the hallway but could not see the chambermaid or any other woman, but saw the decedent standing some distance away near the stairway, and apparently looking toward some one on the stairs or in the hallway below. This was upon the fourth floor of the hotel. He said he asked the decedent: "Where is Lizzie?" and that decedent, with an oath, asked him what he wanted of Lizzie, to which he replied: "I want to see her to tell her not to make so much noise, or stop the noise that was being made in the hall." To this the decedent answered: "If you have any kick coming, go jump on Lizzie, not on me"; to which defendant says he replied: "My dear sir, you need not get hot about it"; that thereupon the decedent said, with a vile oath: "I will fix you," and that he then came over where defendant was and struck him in the face, and followed it up by repeatedly striking and beating him; that defendant withdrew into the room to get a chair with which to defend himself; that he was then in his nightclothes; that he procured from the pocket of his pants, which were lying on the chair, a knife which he opened and used against the decedent to drive him away; that he followed the decedent to the door,

pushing him with one hand and striking him with his knife in the other, and in this manner ejected him from the room; that he was angry but did not intend to kill decedent.

There was some evidence that decedent had been drinking, although no showing as to what extent, and it appeared that he was inclined to be cross and irritable when under the influence of liquor. The cross-examination and the statements theretofore made by defendant upon the preliminary examination tended to show that the defendant was irritated and angry, either by being disturbed or at the attentions being paid by the decedent to the chambermaid, or by both; that defendant could have shut the door and kept the decedent from coming in; that the latter was a much smaller man physically than the defendant, and was entirely unarmed and in his stocking feet; that defendant had no fear for his life; that he did not make proper effort to avoid the difficulty; that the use of the knife was unnecessary.

The appellant assigns seven errors. The first, second, third, and seventh have to do with the sufficiency of the evidence. The fourth and fifth refer to the matter of instructions. The sixth alleges error in the admission of evidence. We will consider these in the inverse order. The sixth assignment is indefinite and uncertain. No reference is made to any particular ruling of the court and no argument is made upon this assignment. Neither is there any argument made as to the fourth and fifth assignments, and we do not think they are well taken. The instructions given by the trial court appear to have been fully as favorable as defendant was entitled to. The instructions numbered 5 and 12, requested by the defendant and refused by the court, are in themselves faulty, inapplicable, or have to do with subject-matters which are fully and properly covered by the instructions given by the court.

We come now to the main question in the case, which is as to the sufficiency of the evidence to sustain the verdict and judgment. It was admitted on the part of defendant in the

opening statement of his counsel in the trial, and again in his brief here, that the defendant used a knife upon the person of the decedent at the time alleged, and that from the effects of the wounds thus inflicted the decedent died, and that this admission was sufficient to establish a *prima facie* case on the part of the state. This being true, it was then for the jury to say, under proper instructions, whether or not the evidence showed a legal justification or excuse for the stabbing. The jury were told that the reasonableness of the apprehension of danger must be judged from the defendant's standpoint at the time of the alleged cutting; that they must take into consideration all the circumstances surrounding and existing there at that time. They were also told that it was not necessary that the assault made by the deceased upon defendant should have been made with a deadly weapon; that "an assault with a fist alone, if there was an apparent purpose to inflict death or serious bodily injury by the deceased upon the defendant, is sufficient to justify the killing in self-defense, if the defendant at the time had reason to believe, and did believe, that he was in imminent danger of death or great bodily harm at the hands of the deceased, supposing that the defendant acted reasonably as a reasonable man under the circumstances."

The jury had a right to take into consideration the size of the men respectively, the fact and manner of defendant first accosting decedent, the fact that the decedent was unarmed, the opportunity of defendant to close and lock his door, his apparent ability to have resisted the assault of decedent without the use of a knife, the character of the conversation between the two men, the credibility of defendant's testimony, the question of his good faith in using the knife, the character of the assault upon and threatened danger to defendant, the reasonableness under all the circumstances of defendant's apprehension of serious bodily injury; and from all of these things, and all other matters shown by the evidence and the conditions and circumstances surrounding the

parties, they were to decide whether or not the defendant was justified in using a knife upon decedent in the manner shown. We think the evidence of the defendant clearly presented this question of fact for the determination of the jury. This question having been by the trial court, upon sufficient competent evidence, submitted to the jury under instructions well calculated to fully protect all of his rights, and that court having denied a motion for a new trial, we think the verdict must be held conclusive.

The judgment is affirmed.

HADLEY, C. J., DUNBAR, RUDKIN, CROW, FULLERTON, and MOUNT, JJ., concur.