BURTON *v.* STATE.

Opinion delivered December 23, 1907.

1. HOMICIDE—JUSTIFICATION.—An instruction in a murder case that if deceased assaulted defendant with a gun, and defendant succeeded in getting hold of it before deceased had opportunity to discharge it, and defendant had reasons to believe that he might take the gun from deceased, then it was the duty of defendant to do all in his power to prevent deceased from killing him or doing him great bodily injury, and that if he failed to do this he was guilty, etc., was erroneous in making the guilt or innocence of defendant depend upon the existence of reasonable grounds to believe that he might take the gun from deceased, regardless of how it appeared to defendant. (Page 52.)

2. TRIAL—CONTRADICTORY INSTRUCTIONS.—The error of giving an erroneous instruction is not cured by giving a correct instruction on the same subject if there is nothing to show which the jury followed. (Page 52.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; reversed.

STATEMENT BY THE COURT.

Tom Burton was indicted at the August, 1906, term of the Clark Circuit Court, for murder in the second degree, committed in Clark County, Arkansas, on the 17th day of February, 1906, by unlawfully, wilfully and with malice aforethought killing and

murdering L. D. Crews by cutting and stabbing him with a knife. He was tried before a jury, convicted of manslaughter, and sentenced to imprisonment for two years in the penitentiary, the time fixed by the verdict of the jury. He appealed to this court.

No person was present when and where the killing occurred, except the defendant and deceased. For the purpose of this appeal it will be sufficient to state the testimony of the defendant as to the occurrence. The defendant testified as follows: "I then went back home, stayed there a little while, and then went over to my pear orchard, about a mile distant, and walked around among the trees to see if the rabbits had been gnawing them. It was then getting late, and I started back home. On the way I saw Crews turn the corner of the lane, about twenty-five yards from me, and called him, and told him I wanted to pay him that dollar, or that I had the dollar for him—something of the kind—I don't recollect the exact words. He stopped, and I went on, intending to pay him. When I got about eight or ten feet of him, he ordered me to stop, which I did. He then immediately said: 'You, are the d—d lying son-of-a-bitch that has caused all this trouble!' and threw his gun down upon me, pointing at me, as if to shoot me, and I thought he was going to shoot me. So I jumped toward him and grabbed at the gun, but missed it, and he struck me a heavy blow on the head with it, and I grabbed him about his body. Then I grabbed again for the gun, and got hold of it, and we scuffled there for some little time. I was trying to take the gun away from him. After a while he got my left thumb in his mouth, biting me, and I saw he was about to get the best of me. I found that I could not take the gun away from him—found it impossible to get it away from him. Then I turned it loose, jerked my thumb out of his mouth, grabbed him around the waist, then with my left arm around his waist, ran my other hand in my pocket, got out my pocket knife, opened it, and went to cutting him with it. I did this to protect myself, to keep him from killing me, which I was satisfied he would do, if he could. I don't know how many times I cut him, nor where I cut him first. The last time I struck him was in the breast; then he hallooed, dropped the gun, sank down, immediately got

up to his knees and was reaching for the gun—appeared to be trying to get it again, and I grabbed it, and at first thought I would unbreech it, and take the loads out, so that he could not shoot me with it; but as it didn't unbreech like my gun, and I saw no way to unbreech it, I thought I would get it out of his way, and started away with it and I saw him fall back, down, and thought from that that I might have killed him, I then went to the fence, sat the gun up against it, and started on home. I didn't know that he was killed, but thought he was badly hurt, and that if I could get the gun away from there he could not shoot me. I did not strike him after he hollowed, nor after he dropped the gun. I was badly hurt. . He struck me a heavy lick with the gun just before I got to him—touched him."

Among the instructions given to the jury by the court, the following was given over the objections of the defendant:

"If the jury believe from the evidence beyond a reasonable doubt that L. D. Crews made an assault upon the defendant with the gun, and that the defendant got hold of the same before Crews had an opportunity to discharge it, and that, under all the circumstances then and there existing, as the same appears from the evidence, the defendant had reasonable grounds to believe that he might take away the gun from the hands of the said L. D. Crews, and thereby prevent him, the said L. D. Crews, from using it to do him, the defendant, great bodily injury, or take his life, then it was the duty of the defendant to have done all that was reasonably in his power to prevent the said L. D. Crews from shooting him, or doing him great bodily injury, and avert the necessity of taking the life of the said L. D. Crews; and if he failed to do this, he is guilty of murder in the second degree, if he acted with malice; or voluntary manslaughter, if he acted without malice."

And the court gave the following at the instance of the defendant: "When a man is threatened with loss of life or great bodily injury, he is compelled to act upon appearances, and to determine from the circumstances surrounding him at the time as to the course he shall pursue to protect himself. In such a case apparent danger is as effectual for his justification as real danger; and when he is brought to trial for a homicide committed under such circumstances, the question for the jury is

not, 'was the danger real, or did the necessity for the killing in order to avert it actually exist?' but 'were the appearances such as to reasonably impress him, honestly, with the belief that the danger and necessity did exist; did they so impress him, and did he act under their influence?' The jury are to judge of the reasonableness and honesty of his conduct from all the circumstances surrounding him at the time—from his standpoint, not from theirs."

*Hardage & Wilson* and *Murphy, Coleman & Lewis,* for appellant.

1. The ninth instruction was wholly erroneous. It ignored the nature, motive and circumstances of the assault, and required of appellant in the midst of the danger and urgency of the situation, at a time when he must necessarily make an immediate and hasty selection of means for his own preservation, to exercise as cool and discriminating a judgment as if he had been engaged in an ordinary business transaction. Under the instruction appellant was to be held for nothing less than voluntary manslaughter, notwithstanding he was exercising an undeniable right, and was compelled to act upon appearances, and to determine from the circumstances surrounding him at the time, as to the course he should pursue to protect himself. 67 Ark. 64; 67 Ark. 594; 22 Ark. 305; 62 Ark. 309; 64 Ark. 144; 68 Ark. 310; 69 Ark. 573; *Id.* 648; 80 Ark. 87; *Id.* 345; 8 B. Mon. 49; 24 Ill. 241; 89 Mich. 150; 29 O. St. 186.

2. The tenth instruction errs in telling the jury that, even though appellant did not provoke the difficulty, still, if he could have avoided the danger by retreating, and failed to do so, they should convict him. This is not the law. Cases *supra;* 73 Mich. 15.

*William F. Kirby,* Attorney General, and *Daniel Taylor,* Assistant, for appellee.

1. The ninth instruction, giving to its language the usual and ordinary meaning, fairly presents the law; but if there be any omission therein, the defect is fully and completely cured by the forceful language of the second instruction given at appellant's request.

2.   The tenth instruction, under certain phases of the case, is proper.  84 Ark. 121.  If appellant desired an instruction on the question of murderous assault, he should have asked for it.

BATTLE, J., (after stating the facts.)   The court erred in giving the instruction objected to by the appellant.  It told the jury, in effect, that if deceased assaulted the appellant with a gun, and appellant succeeded in getting hold of it before Crews, the deceased, had an opportunity to discharge it, and the defendant had reasons to believe that he might take the gun from the deceased, then it was the duty of the defendant to have done all that was reasonably in his power to prevent Crews from shooting him, or doing him great bodily injury; and if he failed to do this he was guilty of murder in the second degree if he acted with malice, or voluntary manslaughter if he acted without malice.  It made the guilt or innocence of the defendant dependent upon the   existence   of   reasonable grounds to believe that he might take away the gun from the deceased, regardless of how it appeared to the defendant or his belief of his power to do so.  This is not the law.  *Smith* v. *State,* 59 Ark. 132; *Magness* v. *State,* 67 Ark. 599-603; *Hoard* v. *State,* 80 Ark. 87.

The instruction objected to is inconsistent with and contradictory to the instruction given at the instance of the defendant, and misleading, and should not have been given.  *Pleasant* v. *State,* 13 Ark. 360; *Bolling* v. *State,* 54 Ark. 588-602; *Selden* v. *State,* 55 Ark. 397.

Appellee insists that the instruction objected to is a copy of the one sustained in *Thomas* v. *State,* 74 Ark. 431.   But this statement is not correct.  In that case the court instructed the jury that if they believed "that George Thomas made an assault upon the defendant with the gun, and that defendant got hold of the same before Thomas had an opportunity to discharge it, and that by reason of the difference in their ages and physical strength, under all the circumstances then and there existing as the same appear from the evidence, the defendant had reasonable grounds for believing that he might take away the gun from the hand of George Thomas," etc.   We held that this instruction did not instruct the jury upon the weight of evidence, and that the instructions, construed together,

were not prejudicial. All the instructions given in the case were not copied in the opinion, and the only objection to the instruction was that it instructed the jury upon the weight of the evidence, and that was the only objection noticed in the opinion. It was not held that it was correct. In connection with other instructions, we held that it was not prejudicial. The evidence showed that the defendant held the gun off from him with his left hand while he drew his pistol with his right, thereby showing no necessity for killing the deceased to protect himself, and a reason why the instruction, construed in connection with others, was not prejudicial.

As to the duty to retreat, see *Carpenter* v. *State,* 62 Ark. 286.

For the error indicated the judgment of the circuit court is reversed, and the cause is remanded for a new trial.