[No. 7433.  Decided March 19, 1909.]

## THE STATE OF WASHINGTON, *Respondent*, v. CHARLES CHURCHILL, *Appellant*.[1]

HOMICIDE — SELF DEFENSE — EVIDENCE — FIGHT WITH DECEASED. Upon a plea of self defense, evidence of a fight between deceased and the accused, two hours before the homicide, is admissible as a circumstance from which malice might be inferred.

CRIMINAL LAW—APPEAL—HARMLESS ERROR.  In a prosecution for manslaughter, it is harmless error to admit in evidence the details of a previous fight between the deceased and accused where the same was favorable to the accused.

HOMICIDE—EVIDENCE.  An assignment of error in excluding evidence of the details of a fight between the deceased and accused is without merit where the details were not presented by the state, the conversation sought to be brought out was not part of the *res gestae*, and the accused was permitted to go into the details of the fight.

SAME—SELF DEFENSE—EVIDENCE.  Where the accused claimed that the killing was in self defense and that deceased advanced with his hand behind his back as if in the act of drawing a weapon, it is admissible for the wife of the deceased to testify that her husband never owned a revolver, as a circumstance tending to show that the accused was not in actual danger, and that the deceased was not armed, to offset cross-examination seeking to establish that a weapon had subsequently been taken from deceased.

SAME—CLOTHING OF DECEASED.  Upon the plea of self defense the clothing of the deceased worn at the time of the shooting is admissible upon an issue as to whether the deceased was in a striking attitude when shot.

SAME—DISPOSITION OF DECEASED.  It is not error to exclude evidence of fights and quarrels which the deceased had had with others, where it does not appear that the accused was informed thereof and the evidence does not go to the point as to who was the aggressor.

[1]Reported in 100 Pac. 309.

SAME—REPUTATION OF DECEASED. Upon an issue of self defense it is not error to exclude evidence of the reputation of deceased as to "using unfair means in fights", as calling for the conclusion of the witness; especially where the witness testified to his reputation as a "gun fighter."

CRIMINAL LAW—TRIAL—READING EVIDENCE. It is not reversible error for the prosecuting attorney to read a correct copy of the evidence to the jury, where the court at the time instructed that the jury were the exclusive judges of what the testimony was.

HOMICIDE—SELF DEFENSE—INSTRUCTIONS. Where the only evidence as to deceased's carrying a gun was a statement on cross-examination that none was found on his body and evidence of his wife that he never owned any, it is not error to refuse to instruct that such evidence was to be considered only to determine whether he was a dangerous man; since it also bore upon the question whether accused was in actual danger.

SAME—APPEARANCE OF DANGER. Instructions on the right of self defense are correct where they authorize the accused when attacked to act upon reasonable appearances of danger, judged from the accused's standpoint.

SAME. The criterion of apparent danger is the situation as viewed from defendant's standpoint, or danger apparent to his comprehension as a reasonable man in his situation.

SAME—BELIEF IN DANGER. An instruction as to the right of the accused to act in self defense if in the "honest belief" of danger, is equivalent to requiring a "reasonable belief," and both may be used conjunctively.

SAME—BODILY HARM. An instruction on self defense properly requires apparent danger of "great" bodily harm.

CRIMINAL LAW—APPEAL—INSTRUCTIONS. Error cannot be predicated upon the failure of the court to define the word "feloniously," in the absence of any request therefor.

SAME—KNOWLEDGE OF ACCUSED. An instruction upon self defense directing the jury to consider "all" the facts and circumstances bearing on the question and surrounding defendant at the time, sufficiently includes defendant's "knowledge derived from personal observation."

HOMICIDE—SELF DEFENSE. A simple assault or an ordinary battery do not justify the taking of life in self defense.

CRIMINAL LAW—TRIAL—INSTRUCTIONS. It is not error to repeat the instructions on request of the jury.

SAME. It is not error to refuse an instruction which, in legal meaning and effect, has already been given.

Appeal from a judgment of the superior court for Yakima county, Preble, J., entered January 29, 1908, upon a trial and conviction of manslaughter. Affirmed.

*Henry J. Snively,* for appellant.

*J. Lenox Ward* (*Henry H. Wende* and *Harcourt M. Taylor,* of counsel), for respondent.

Gose, J.—The defendant was charged with the crime of murder in the first degree. The jury found him guilty of the crime of manslaughter. From a judgment on the verdict he prosecutes this appeal.

Seventeen errors are assigned, which will be treated in the order in which they are presented.

(1) "The court erred in permitting the details of the fight between Churchill and Zeigler, which took place in the Eagle saloon on the afternoon of the killing, to be received in evidence against defendant's objections." The objection is not well taken; (1) because the evidence admitted simply showed that a fight occurred between deceased and the appellant a few hours before the homicide, and that the deceased was the aggressor; (2) it was admissible as a circumstance from which the jury might infer malice on the part of the appellant; (3) if we concede that it was error, it was harmless in that it was favorable to the appellant, and does not require reversal. 1 Bishop, New Criminal Procedure, § 1276.

"It would have been proper upon the part of the prosecution in establishing its case in chief to have proven previous trouble between these parties, for the purpose of showing the existence of malice in the heart of the defendant when the killing took place. Such being the fact, it was certainly entirely proper for the prosecution to examine into the question, when it had already been touched upon by the defense. If the inquiry addressed to the woman as to the nature of this trouble to which she referred had developed the fact that a physical encounter had at some time in the past taken place between these men, the competency and admissibility

of such evidence could not be questioned for a moment. Such being the rule of law, it is evident that the question asked was entirely proper. If it be conceded, for present purposes only, that the answer went too far, and entered too much into detail, then defendant's remedy was by motion to strike out, and an exception to the ruling of the court in allowing the question would not meet the difficulty. To indicate the state of mind of the defendant at the time of the killing, the prosecution is always entitled to show any previous difficulties or troubles that have arisen between the parties, and this showing is not limited to physical encounters, but may consist solely in an affray of words; and this character of evidence is admissible, however much it may tend to disgrace and injure the defendant in the estimation of the jury. An objection to its admission upon such ground is not at all tenable. At the same time, this character of evidence may not be introduced in detail." *People v. Colvin*, 118 Cal. 349, 50 Pac. 539.

(2) "The state, against the objection of the defendant, was permitted by the court to go into full details of the fight between the deceased and the defendant in the Eagle saloon; but, when defendant endeavored to go into details of this fight, the state objected and the court rejected the evidence, to which the defendant excepted." This assignment is without merit, for the following reasons: (1) We have shown that the details of the fight were not presented to the jury by the state; (2) the conversation between the deceased and the barkeeper was not part of the *res gestae;* (3) the appellant was permitted to go into details of the fight occurring in the afternoon preceding the homicide, and present evidence to the jury showing that the deceased violently threw a beer glass on the bar, turned to the appellant, who theretofore had not spoken to him, thereupon applied an abusive epithet to the appellant, and then struck him.

(3) "The court erred in permitting Mrs. Anna Zeigler, the wife of the deceased, to testify that her husband did not own a revolver." The appellant admitted the killing, but

justified on the ground of self-defense. The testimony is without conflict in that it shows that the deceased was the aggressor. Practically all the witnesses testified that at the time of the shooting the deceased was advancing toward the appellant. There is evidence tending to show that at such time the deceased had his right hand behind him as if in the act of drawing a weapon. The right of self-defense is grounded upon two elements; (1) that the party attacked may use sufficient force to offset the actual danger; (2) that he may use sufficient force to offset the apparent danger. The evidence was admissible as a circumstance tending to prove, (1) that the appellant was not in any actual danger. *State v. Lattin,* 19 Wash. 57, 52 Pac. 314; 6 Ency. Evidence, 758; 21 Cyc. 970-1; (2) that the deceased was not armed at the time of the fatal encounter. Moreover, the appellant had theretofore interrogated one of the state's witnesses as follows:

"Question: Did you see anybody search his [deceased's] pockets? Answer: No, sir. Q. Did you see anybody take anything from the pockets or from the person? A. No, sir."

This cross-examination could have had only one purpose, viz., to impress upon the minds of the jury the belief that some one took some weapon from the pockets of the deceased just after the killing. The examination of Mrs. Anna Zeigler upon this point was as follows: "Q. Now, during all the time that you lived in or about North Yakima, did or did not ever your husband own a revolver? A. No, sir."

In *People v. Powell,* 87 Cal. 348, 361, 25 Pac. 481, 11 L. R. A. 75, it is said:

"The prosecution was allowed, over the objection of the defendant, to prove in rebuttal that the deceased was not in the habit of carrying arms; that on various occasions he had so stated; and that, on the morning of the shooting, he had refused to go armed, when it was suggested that he had better do so. We have looked in the transcript in vain for any evidence on the part of the defendant which could justify

or call for such evidence in rebuttal. There was evidence tending to show that the defendant believed the deceased to have been armed at the time he shot him. This rendered it competent for the prosecution to prove that, as a matter of fact, he was not armed at that time, . . . . . ."

(4) "The court erred in permitting the state in its case in chief to introduce the clothing worn by the deceased at the time of the shooting." It is urged that this was error because there was blood on the clothing. The issue was sharply drawn as to whether the deceased was in a striking attitude when the fatal shot was fired. Under such an issue, the clothing was clearly admissible as evidence under the authorities cited by the appellant. 6 Ency. Evidence, 672-3; *Christian v. State*, 46 Tex. Cr. App. 47, 79 S. W. 562.

"The clothing worn by the deceased at the time of the shooting and the gun with which the shooting was done, were admitted in evidence over the objection of the defendant, and this is assigned as error. We think that the state was entitled to introduce them, and that no error was committed in permitting the jury to take them to their room when they retired to consider their verdict." *State v. Cushing*, 14 Wash. 527, 45 Pac. 145, 53 Am. St. 883.

(5) The refusal of the court to permit the appellant to prove particular fights and quarrels which the deceased had engaged in with third parties before the homicide is assigned as error. In support of this assignment the appellant has called our attention to Vol. 6, Ency. Evidence, 769. Under the rule announced by this authority, the evidence was not competent because it does not appear that the appellant had any knowledge of such facts. In *People v. Powell*, *supra*, in discussing this question, the court say at page 361:

"On cross-examination of one or more of the witnesses for the prosecution, the defendant asked whether the deceased had not had quarrels with several persons named, and it was admitted that the deceased had so stated. There was no objection to this evidence by the prosecution. It was clearly incompetent, and, if it had been objected to, would no doubt have been excluded."

The evidence shows that, on the day of the homicide, the deceased was drinking. The court gave the appellant wide latitude in presenting evidence to the effect that at such times he was generally reputed to be violent and dangerous. It does not go to the point as to who was the aggressor, because in this respect the evidence of the state and that of the defendant are in harmony. The entire evidence shows, as we have said, that the deceased was the aggressor. The real issue was whether at the time the appellant fired the fatal shot he had reasonable ground to believe that he was either in actual or apparent danger of death or great bodily harm.

(6)   Error is assigned in that the court sustained an objection to the following question propounded by the appellant:

"Mr. Bonnell, do you know the reputation of the deceased at any time before his death in this community? I mean, his general reputation as a man who when drinking used unfair means in any fights that he got into?"

Thereupon the appellant was permitted to examine the witness as follows:

"Q.  I wish to ask you if you know during his life time the general reputation of the deceased as being a reckless, dangerous, and violent fighter? A.  Yes, sir. Q.  What was it? A.  Must I explain what my— Q.  Was he a reckless, dangerous fighter or not? A.  He was dangerous."

The appellant urges that the ruling is error under the rule announced in *State v. Ellis*, 30 Wash. 369, 70 Pac. 963. In that case an objection was sustained to the following question propounded by the defendant:

"Do you know the general reputation and the habit of the deceased, during the times, and in the communities you have stated, as to resorting to the use of fire-arms and other deadly weapons when engaged in quarrels?"

At page 373, the court say:

"But it is apparent that a man who habitually carries and uses such weapons in quarrels must cause greater apprehen-

sion of danger than one who does not bear such reputation and does not have such habits."

The question whether the deceased would resort to unfair means simply calls for the conclusion of the witness. Whether he had the reputation of being a "gun fighter" is a fact, and, as we have seen, the appellant was permitted to make full inquiry of the witnesses along this line.

(7) The prosecuting attorney was permitted against the appellant's objection to read to the jury what he stated was a copy of the appellant's testimony in the case. This is assigned as error. The court in ruling upon the objection remarked: "The jury will judge what the testimony is. They are the exclusive judges of what the testimony has been."

"There is no contention in the case that the evidence read by the prosecuting attorney was not the evidence of the witness. No prejudice, therefore, could result." *State v. Costello*, 29 Wash. 366, 69 Pac. 1099.

(8) Error is assigned in the refusal of the court to give the appellant's proposed instruction 14, particularly the following:

"Any evidence tending to show, if you find there is any such, that deceased did not own or carry a revolver, is only to be considered by you in determining whether or not deceased was a dangerous man, and was admitted solely for this purpose."

The quoted part is not a correct statement of the law, as applied to the case at bar. The only evidence as to whether the deceased had a gun was that elicited on cross-examination that none was found on his body, and the testimony of the deceased's wife that he did not own a gun. The jury had a right to consider this evidence on the question as to whether the appellant was in actual danger at the time of the shooting.

(9) Error is assigned on instructions 5 and 6, which the court gave the jury. They are in the following language:

"(5) A person attacked at a place where he has a right to remain need not retreat but may repel force by force in defense of his person against one who, at the time, is actually or apparently, intending or endeavoring unlawfully to kill him, or inflict upon him great bodily harm, and in such defense the assailed may lawfully meet the attack made upon him in such a way and with such force as under all the circumstances he at the moment honestly believes and has reasonable grounds to believe are necessary to save his own life, or to protect himself from great bodily harm and in such defense the assailed may lawfully kill the assailant, if at the time he is actually or apparently in imminent danger of death or great bodily harm at his assailant's hands, and if under all the circumstances, he honestly believes and has reasonable grounds to believe such killing to be necessary to save his own life, or protect him from great bodily harm.

"(6) But the rule of law is different when the attack is not felonious in character, that is, when from the attack there is no real or reasonably apparent danger of death or great bodily harm to the assailed. A person assailed has no right to take the life of his assailant even if he believes his own life in danger when the assault is without a weapon of any kind and when there is no reasonable ground for the belief by the person attacked that his person is in imminent danger of death or great bodily harm, but that an ordinary battery is all that is intended and all that he has reasonable ground to fear from the acts of his assailant, while a person is not bound to retreat from a place where he has a right to remain and may lawfully repel a threatened assault and to that end may use force enough to repel the assailant, yet he has no right to repel a threatened assault with naked hands by the use of a deadly weapon in a deadly manner, unless he honestly believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm."

The evidence, as we have stated, clearly established the fact that at the time of the killing the deceased had made an attack on the appellant, and that he had struck at him or struck him. The points of objection are, (1) error in the use of the word "attacked;" (2) that they did not sufficiently define the right of the appellant to act upon the danger

as it appeared to him; (3) that the use of the words "honestly believes" makes the instruction objectionable; (4) that the words "bodily harm," and not "great bodily harm," should have been used. The court also instructed the jury as follows:

"However, an assault with the naked fist is sufficient to justify killing in self-defense if there is at the time a reasonably apparent purpose by the assailant to inflict death or great bodily harm upon assailed, and if the latter at the time believes and has reasonable grounds to believe that he is in imminent danger of death or great bodily harm at the hands of the assailant, supposing that the person assailed acts reasonably and as a reasonable man under the circumstances, as such circumstances at the time in good faith appear to him.

"The term apparent danger means not apparent danger in fact, but apparent danger to defendant's comprehension, as a reasonable man situate as he was situated. That is, did defendent believe and have reasonable grounds to believe that he was in imminent danger of death or great bodily harm at the time of the alleged killing?

"The court instructs you that though mere threats are insufficient to justify a killing in self-defense, if the jury believe that prior to the alleged homicide, deceased made threats of a violent nature against defendant, and the evidence leaves the jury in doubt as to what the acts of the deceased were at the time of the alleged homicide, or as to what defendant might properly have apprehended in respect to the intentions of deceased, the jury are entitled to consider the threats in connection with the other evidence in determining who was probably the aggressor, and in determining what apprehension might reasonably arise in the mind of the defendant from the conduct of the deceased, as such conduct appeared to the defendant.    .    .    .

"To justify killing in self defense there need be no actual or real danger to the life or person of the party killing, but there must be or reasonably appear to be at or immediately before the killing some overt act of the person killed which, either by itself, or coupled with words, facts or circumstances, then or theretofore occurring, reasonably indicate to the party killing that the person slain is at the time endeav-

oring or immediately to endeavor to kill him or inflict upon him great bodily harm and he must honestly believe, upon reasonable grounds, that he is in imminent danger of such death or great bodily harm.

"It is not necessary however to justify the use of a deadly weapon that the danger be actual. It is enough that it be an apparent danger, such an appearance as confronting a reasonable person would induce him to believe that he was being assailed and that he was in immediate danger of death or great bodily harm, at his assailant's hands. Upon such appearances one may act with safety, and will not be held accountable, though it should afterwards appear that the indications upon which he acted were wholly fallacious and that he was in no actual danger.

"(a)   I instruct you that every man has a right at any time to use a public street as such in the lawful and peaceful pursuit of his own affairs.

"(b)   The fact, if it be a fact, that defendant was armed with a revolver does not forfeit his right of self defense. The question is was he excusable and justifiable in using a revolver under the circumstances and not whether or no he was justifiable and excusable in having one at the time of the shooting, if you find there was a shooting. By the circumstances I mean the circumstances as they appeared to defendant at that time.   .   .   .

"It is for you to determine whether or not defendant had reasonable ground to apprehend imminent death or great bodily harm and in deciding that question you should judge from defendant's standpoint at the time of the shooting, if there was any shooting, that is to say you should take into consideration all the facts and circumstances bearing on the question and surrounding defendant and existing at or prior to the time of the alleged shooting, as said facts and circumstances are disclosed by the testimony, including Zeigler's bad character and threats, if they have been proved."

As to the use of the word "attacked," the appellant cites: *Patillo v. State,* 22 Tex. App. 586, 3 S. W. 766; *Gonzales v. State,* 28 Tex. App. 130, 12 S. W. 733; *Poole v. State,* 45 Tex. Cr. App. 348, 76 S. W. 565; *Terry v. State,* 45 Tex. Cr. App. 264, 76 S. W. 928; *Brady v. State,* 43 Tex.

Cr. App. 76, 65 S. W. 521; *Nix v. State* (Tex. Cr. App.), 74 S. W. 764; *Francis v. State* (Tex. App.), 55 S. W. 488.

In *Patillo v. State, supra*, at page 593, it is said:

"It is a rule, not only statutory, but of almost universal acceptation, that a party may act upon reasonable appearances of danger, and that whether the danger is apparent or not is always to be determined from defendant's standpoint."

In *Gonzales v. State, supra*, at page 135, it is said:

"In explaining the rule as to apparent danger, it does not distinctly direct the jury that the danger must be judged of from the defendant's standpoint,    .    .    .

In *Poole v. State, supra*, page 365, it is said:

"As we understand the evidence on the part of the appellant, there was no actual attack by deceased on appellant at the time of the homicide, but there was preparation to attack."

In *Terry v. State, supra*, page 273, the court say:

"The court properly presented the law of actual attack, but failed to present the law of apparent danger."

In *Brady v. State, supra*, page 522, the court say: "There had been no attack by deceased,    .    .    .    " In the last case the deceased was some distance from the defendant and was advancing with an open knife, his remarks indicating that he was intending to make an attack. In *Nix v. State, supra*, page 767, it is said: "   .    .    .    the testimony tends to show he was about to attack him, and had not actually consummated the attack." In *Francis v. State, supra*, page 489, it is said: "We think the court, in giving a charge on self defense, should have enlarged it to a joint attack by both deceased and his brother." It will be observed that these cases touch on the two questions, viz., the question of attack and the question of apparent danger, and that the instructions given in the case at bar are within the law announced by these cases in so far as the facts are applicable.

Second.   The appellant urges that "in charging on self-defense and in that connection on threats made by deceased against defendant, the criterion of apparent danger is as the situation is viewed from the standpoint of the defendant and not as to the belief of danger by the jury." The court so charged in its instruction 8. On the question of the duty of the court to instruct as to apparent danger, our attention has been directed to *Adams v. State*, 47 Tex. Cr. App. 347, 84 S. W. 231. At page 356, the court say:

"The charge, instead of giving the reasonable appearance of danger, as viewed by defendant, leaves it to be viewed by the jury as they believe or view such danger."

*Burton v. State*, 85 Ark. 48, 106 S. W. 942, cited by the appellant, is inapplicable on the facts. *State v. Ellis*, 30 Wash. 369, 70 Pac. 963, is relied upon by the appellant. At page 374, it is said: "On the contrary, the apparent facts should all be taken together to illustrate the motives and good faith of the defendant at the time of the homicide."

In instruction 8, *supra*, the court said to the jury:

"The term 'apparent danger' means not apparent danger in fact, but apparent danger to defendant's comprehension as a reasonable man situate as he was situated."

Third.   The appellant cites *Tillery v. State*, 24 Tex. App. 251, 5 S. W. 842, 5 Am. St. 882, in support of this contention.   In discussing the meaning of the words "honest belief," at page 272, it is said:

"While it may be abstractly correct to require that the defendant's belief of the existence of danger should be an *honest* one, it is going too far, we think, to so instruct the jury, especially when such instruction is repeated so often, and especially, too, in view of the evidence in this case."

The court seems to have based its view, measurably at least, on the criminal code of the state. We fail to appreciate the difference in meaning between the expressions "honest belief" and "reasonable belief." They are used both conjunctively and disjunctively by different courts. Just how a

belief can be reasonable and not be an honest belief as applied to the law of self-defense, we do not perceive, nor does counsel seek to give us light. Webster defines "reasonable" as meaning, "Just; honest." Ordinary observation and experience in the trial of criminal cases do not lead to the conclusion that such nice distinctions ever enter into the deliberations of the jury or secure a verdict. Human life in this state has not become so cheap that it can be taken and the party so taking it obtain immunity on the plea of self-defense, where the facts and circumstances surrounding the killing do not show that the killing was done in an honest belief either of imminent danger to the life of the party taking it or of great bodily harm to his person. The conjunctive use of the words "honestly believes" and "had reason to believe," in a criminal case, has been held proper by this court. *State v. Stockhammer*, 34 Wash. 262, 75 Pac. 810; *State v. Cushing*, 17 Wash. 544, 560, 50 Pac. 512.

Fourth. There was no error in the use of the words "great bodily harm." *State v. Johnson*, 47 Wash. 227, 230, 91 Pac. 949. The contention of the appellant that one who is in apparent danger of "bodily harm" can take the life of his assailant, would give encouragement to the taking of human life upon the merest pretext of danger. We are not willing to recognize or announce a doctrine so fraught with danger to both the public peace and the safety of the citizen.

(10) It is urged that the use of the word "felonious" in instruction 6 was error. *State v. Clark*, 134 N. C. 698, 47 S. E. 36, is relied upon in support of this assignment. In that case the court, in effect, told the jury that they should convict the defendant if they were left in doubt as to whether the deceased at the time of the killing was making a felonious assault upon the defendant. This would place the burden of proof on the defendant, when the law at every stage of the trial casts it upon the state. The court also criticised the trial court for failing to define the word "felo-

nious." It is urged' that it should have been defined to the jury in this case. The appellant, not having requested the court to define it, cannot predicate error upon the mere failure to do so. *State v. Johnson*, 19 Wash. 410, 53 Pac. 667. Moreover, the instructions taken as an entirety clearly indicated to the jury the meaning of this word.

(11) (12) These assignments have reference to the words "great bodily harm" and "honestly believes," and have already received consideration. The appellant in his requested instructions used these words in substantially the same manner as they were used by the court. We should, therefore, have been justified in treating the words as having been used at his request, but have preferred to rest our view on the ground that their use was proper.

(13) It is here urged that the court's instruction No. 15 was erroneous, as not including the defendant's knowledge derived from personal observation. When the court instructed the jury that it should consider "all the facts and circumstances bearing on the question and surrounding defendant and existing at or prior to the firing of the alleged shot," it fully covered the ground upon which the assignment is made. "All the facts and circumstances" certainly include each and every one of them.

(14) This assignment has been considered in discussing the objection to the words "great bodily harm."

(15) In order to sustain this assignment we would be required to hold that a simple assault or an ordinary battery would justify the taking of human life. We are not willing to stand sponsor for such a doctrine.

(16) The repetition of certain instructions is assigned as error. The jury during its deliberations returned into court and submitted the following communication:

"Your Honor, The jury would like to have repeated that part of the instruction referring to defendant's state of mind as a reasonable man at the time of the shooting. Our interpretation or understanding at this point differ."

Whereupon the court again read to them instructions 19, 20, and 21. Thereupon the appellant requested the court to again read to the jury instruction 6. The court thereupon again read to the jury all the instructions in the case. This did not constitute error.

(17) Error is predicated upon the refusal of the court to give to the jury appellant's requested instruction No. 13, which is as follows:

"I instruct you, that upon the issue of self defense involved in this case, the real question presented to you is: Did the facts as they appeared to the defendant at the time of the. alleged shooting coupled with any threats of death or violence which deceased may have made against the defendant, if you believe from the evidence he made any, and his general reputation as a quarrelsome and dangerous man; if you believe the same has been established by the evidence; justify an ordinarily prudent man in believing he was in imminent danger of death or serious bodily harm or injury. If you believe from the evidence that such were the appearances to defendant, he was excused for the commission of the killing, if any has been proven, as the rights of self defense permit one to act honestly upon. the appearances of danger, to which he is exposed at the time."

In legal meaning and effect it did not differ from the instructions given.

The record is singularly free from error, and the instructions to the jury were clear, apt, and comprehensive. The case will therefore be affirmed.

CHADWICK, FULLERTON, CROW, MOUNT, and DUNBAR, JJ., concur.