[No. 8260.   Department One.   December 11, 1909.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD QUINN, *Appellant*.[1]

CONSTITUTIONAL LAW—RIGHTS OF ACCUSED—CRIMINAL LAW—NOTICE OF NATURE OF OFFENSE—WAIVER. Constitution, art. 1, § 22, providing that the accused shall have the right to demand a copy of the charge against him, and Bal. Code, § 6879, providing that such copy shall be served, merely grant a privilege that is waived by plea and entering upon the trial without request for the copy, service of which is not jurisdictional.

CRIMINAL LAW—PLEA OF NOT GUILTY—RECORD. A plea reciting in the first division that the accused "hereby enters his plea of not guilty" and adding pleas of mental irresponsibility and insanity, shows an affirmative plea of not guilty.

SAME—RECORD OF PLEA—PRESUMPTIONS. Where the accused, after overruling a demurrer to the information, announced himself ready for trial, it will be presumed that a plea had been entered even if not shown by the record.

SAME—PLEA OF INSANITY—WITHDRAWAL—EFFECT. Laws 1907, p. 33, § 2, provides for a separate plea of insanity, "in addition to the plea or pleas" required by law, so that withdrawal of the same does not affect the trial on the other pleas.

[1]Reported in 105 Pac. 818.

HOMICIDE—DYING DECLARATIONS—OPINION EVIDENCE. A witness may give his opinion as to whether the deceased in making a dying declaration apparently believed that she could not live.

SAME—ADMISSIBILITY OF DECLARATION. A dying declaration is admissible where the deceased had received a mortal wound and had been informed by the attending physician that she must die, and the statement was drawn by the prosecuting attorney, read in her presence, and assented to and signed in the presence of witnesses.

CRIMINAL LAW—EVIDENCE—HEARSAY. The statement of an officer identifying a gun and cartridges handed to him by another, who told him they belonged to the defendant, is not inadmissible as hearsay, where the other person was called and testified that the defendant gave her the gun and cartridges shortly after the shooting and that she gave them to the officer.

CRIMINAL LAW—APPEAL—HARMLESS ERROR. Error in admitting hearsay evidence to identify a gun as that of the accused is harmless where the accused admitted his ownership while on the witness stand.

CRIMINAL LAW—TRIAL—INDORSEMENT OF WITNESS—DISCRETION. Allowing the indorsement of the names of witnesses upon the information after trial commenced is largely discretionary, and not ground for reversal in the absence of abuse of discretion.

HOMICIDE—EVIDENCE—THREATS—REMOTENESS. Evidence that the accused, two years before the homicide, had, in the presence of the deceased, threatened to shoot the deceased, is competent and not inadmissible as too remote.

HOMICIDE—INSTRUCTIONS—DEFINING DEGREES OF OFFENSE. An instruction defining the degrees of murder and manslaughter in the language of the statute is sufficient; since the statute bears no technical terms and is plain and unambiguous.

HOMICIDE—APPEAL—INSTRUCTIONS—HARMLESS ERROR. Where the defendant was guilty of murder either in the first or second degree, an unwarranted instruction on the subject of manslaughter is error favorable to the defendant of which he cannot complain.

CRIMINAL LAW—INSTRUCTIONS—REASONABLE DOUBT. An instruction, considered as a whole, correctly defines a reasonable doubt, where it is stated that the law did not require absolute certainty, or proof beyond the possibility of error, and required the jury to be convinced to a moral certainty and to have an abiding conviction of the defendant's guilt; although it contains the statement that the law of reasonable doubt is based upon the doctrine of reasonable probability, which might be objectionable if standing alone.

INDICTMENT AND INFORMATION—SUFFICIENCY OF STATEMENT OF FACTS. An information for homicide sufficiently describes the man-

ner of killing, under Bal. Code, § 6840, if it states the facts consti-
tuting the offense in ordinary language, so that it may be under-
stood by a person of common understanding.

Appeal from a judgment of the superior court for Snoho-
mish county, Black, J., entered January 30, 1909, upon a
trial and conviction of murder in the first degree. Affirmed.

*E. C. Dailey*, for appellant.

*Ralph C. Bell* and *Robert Mulvihill*, for respondent.

CHADWICK, J.—The appellant was convicted of the crime
of murder in the first degree, and brings this case here upon
several assignments of error, the decision of which will re-
quire no particular statement of the facts. It is first urged
that appellant was not served with a copy of the information,
thus being denied the protection of the Bill of Rights, in that
he has not been informed of the nature and cause of the accu-
sation made against him. Section 22, art. 1 of the state
constitution provides that every person accused of crime
shall have the right "to demand the nature and cause of the
accusation against him, to have a copy thereof," etc. It is
provided (Pierce's Code, § 2131; Bal. Code, § 6879), that
"as soon as may be after the filing of the information for a
capital crime, the party charged shall be served with a copy
thereof," etc. So far as the constitution is concerned, it is
enough to say that it goes no further than to give the right
to demand a copy, a privilege that was not exercised in this
case; and under an almost unbroken line of authority it is
held that the statute is not jurisdictional. No greater weight
is attached to it than to the constitution itself. Each grants
a privilege which may be waived. In this case defendant was
regularly arraigned, asked for time to plead, was granted
five days, within which he demurred to the information;
whereupon he entered a plea as follows:

"Comes now the defendant and for answer to the charge
set forth in the information.

"(1)  Hereby enters his plea of not guilty.

"(2)  That at the time charged in the information, and for a long time prior .thereto, this defendant was insane and mentally irresponsible.

"(3)  That after said time charged in the information, and for a long time prior thereto, up to and including the present time, the said defendant is insane and mentally irresponsible."

His conduct was a waiver of formal service of a copy of the information. The purpose of the law is to give notice of the crime charged. At common law this was not given until arraignment, but neither the constitution nor the statute contemplates that a trial shall go for naught, if a defendant being informed of the crime charged voluntarily pleads without service of a written copy of the charge. The arraignment has performed the office of the law, and no request being made for a copy of the information, the statutory right must be deemed to be waived. The authorities upon this phase of the case are of one accord, and are collected in Vol. 10, Ency. Plead. & Prac., p. 471.

After appellant had announced himself ready for trial, and while a jury was being impaneled, appellant, through his attorney, withdrew his plea of insanity, the record reciting that, "Defendant in open court withdraws his plea of insanity." After the jury had been impaneled and sworn to try the case, and a witness had been called and sworn, the record recites: "Defendant now objects to proceeding with the trial because no plea has been entered since the withdrawal of the plea of insanity." This objection was overruled. In this the court did not err. The record showing that appellant demurred on the ground that the information did not state facts sufficient to constitute a crime; and, having announced himself ready for trial, this court will presume that a plea had been entered if the record did not show, as we think it does, an affirmative plea. *State v. Straub*, 16 Wash. 111, 47 Pac. 227.

. If we understand the position of appellant, the point is made that the first plea was under the Laws of 1907, p. 33,

chap. 30, §2, and that a withdrawal of the plea of insanity withdrew all other pleas. It will be noticed that the statute by its express terms makes allowance for the plea of insanity without affecting other pleas. It says of the plea of insanity that it may be entered "in addition to the plea or pleas required or permitted by other laws than this." The pleas then being severable, the withdrawal of the one left the other, and it was the duty of the court to proceed with the trial.

Testimony of a dying declaration was received by the court. In laying the premise for this the following question and answer were allowed by the court, over the objection of appellant:

"Question. State whether or not she apparently believed at that time that she could not live. Answer. Why, that is the understanding I had of it; that she believed that she was going to die."

Ordinarily expressions of bare opinion are not allowed, but in receiving declarations of this character, where death follows the wound, they are by that fact deemed to be supported and supplemented, and are given the character of positive evidence. Necessity has worked an exception to the general rule in this particular. The deceased had received a mortal wound and had been informed by the attending physician, who described her physical condition to the jury, that she must die. The statement was then drawn by the prosecuting attorney and read in her presence and assented to by her, and was signed by her in the presence of witnesses. It will thus be seen that, irrespective of the testimony complained of, there was ample foundation for the reception of the declaration. The ruling of the court in admitting the declaration was well within the rule of *State v. Power*, 24 Wash. 34, 63 Pac. 1112, and *State v. Mayo*, 42 Wash. 540, 85 Pac. 251.

The next error assigned is that a gun and some cartridges were admitted, upon the testimony of an officer who had them in possession and who was allowed to state, over objection, that another had told him that it was the gun and cartridges

belonging to the defendant. It is urged that this was hearsay. Standing alone it would clearly be so. But the state cannot state its case in one breath, nor prove it by one witness. The party who gave the gun and cartridges to the officer was put upon the stand and testified that defendant handed her the gun and cartridges shortly after the shooting, and that she had delivered them to the officer. The testimony was proper and tended to identify the exhibits. This assignment is without merit for another reason: The appellant, when upon the witness stand, identified the gun as his own.

It is also complained that the state was allowed to indorse the names of certain witnesses upon the information during the progress of the trial. The last expression of the court on this subject will be found in the case of *State v. Le Pitre*, 54 Wash. 166, 103 Pac. 27, wherein the previous decisions of this court were collected. In that case we undertook to answer the statement, made in that case as it is made in this, that the court has never squarely decided the question. Our conclusion, after a critical review of the authorities as well as our own decisions, was that it is settled in this state that "the indorsement of the names of witnesses upon an information is largely a matter of discretion with the court; and, in the absence of a showing of abuse or that some substantial injury has resulted to the accused, the order of the court will not be reversed."

A witness was also permitted to testify that, in September, 1906, appellant had threatened to shoot deceased, in his presence. The witness testified that appellant, after applying a vile epithet, said to her, "I will take a shot at you yet." It is contended that this testimony is incompetent, irrelevant, and immaterial, and is too remote. The first objections are without merit, and require no discussion. As to the last, this court has decided, in accord with the great weight of authority, that courts will not exclude threats because of remoteness. The time when a threat is made is immaterial. The lapse of time may be considered in connection with all other

facts and circumstances to determine its weight as evidence, but its competency is a question of law for the court. *State v. Gates*, 28 Wash. 689, 69 Pac. 385. This subject was exhausted in that case, and we do not feel called upon to revive its discussion.

The court told the jury that:

"You are authorized, if, under the evidence, you are satisfied beyond a reasonable doubt that the defendant is guilty of murder in the first degree or murder in the second degree, or of manslaughter, to return a verdict in conformity with such evidence. . . . You are instructed that the laws of this state defining murder in the first and second degree, and manslaughter, so far as is applicable to this case, are as follows:

"Every person who shall purposely and of deliberate and premeditated malice kill another shall be deemed guilty of murder in the first degree. . . . Every person who shall purposely and maliciously, but without deliberation and premeditation, kill another shall be deemed guilty of murder in the second degree. . . . Every person who shall unlawfully kill any human being, without malice expressed or implied, either voluntarily upon a sudden heat or involuntarily but in the commission of some unlawful act, shall be deemed guilty of manslaughter."

It is contended that these instructions do not define the crime of manslaughter. We think that no more exact definition than a rehearsal of the statute was necessary. The statute bears no technical terms, and is plain and unambiguous and easily understood by a juror of ordinary intelligence. A further objection is made by counsel in his exceptions to the instructions, but not discussed in his brief, and that is that they do not instruct the law of the case. We agree with counsel in this particular. There is nothing in the record warranting an instruction for manslaughter. Appellant was guilty either of murder in the first degree or murder in the second degree, or he was not guilty. But he is not entitled to a reversal of the case on that account. The error of the court was favorable to him and he cannot complain. Of certain other instructions it is said:

"Our objections to these instructions are that they do not state the law of the case and are not applicable to the facts."

No specific objection is pointed out. It is sufficient to say that we have carefully examined the instructions complained of and find no error in them. They embrace the usual instructions of a general character given in this class of cases, and are couched in singularly apt language.

The giving of the following instruction is assigned as error:

"I have instructed you a great deal about reasonable doubt. As I said before, to some of the jurors who are now in this case, that the lawyers and judges of this country, for a great many years, have been endeavoring to find an exact and careful definition of it and, after all, they have only succeeded in saying this, that a reasonable doubt is a reasonable doubt. That is largely left to your good judgment. The law, however, is not based upon the doctrine of absolute certainty. If that were the law, it would be rarely, if ever, that a criminal could be convicted. The law does not require absolute certainty. It is based, rather, upon the doctrine of reasonable probability. And if, after considering all the evidence in the case, you can say that you are convinced to a moral certainty but not to an absolute certainty—if the evidence leaves in your mind an abiding conviction of the guilt of the defendant, then you are convinced beyond a reasonable doubt. You cannot go out and conjecture and guess and imagine possibilities. You must arrive at your conclusion from a fair consideration of all the testimony in the case, and the law does not require the several acts to be proven to you beyond the possibility of error, but it does require that the evidence leaves in your mind an abiding conviction and that you be convinced to a moral certainty of the guilt of the defendant before you can find him guilty."

That part of the instruction wherein the court says to the jury that the law of reasonable doubt is based upon the doctrine of reasonable probability may be technically correct, but is objectionable in law, and if standing alone would be deemed prejudicial. But, considering rather than commending the instruction as a whole, we think it fairly states the law of

reasonable doubt, and that the jury could not have been misled. We find no exception to this instruction in the record, but on account of the gravity of the case we have considered this and other errors which would not otherwise be noticed.

It is also urged that the information does not describe the manner of the killing. The information is in the form approved in *Leonard v. Territory*, 2 Wash. Ter. 381, 7 Pac. 872, and many subsequent decisions of this court. See, *State v. Cronin*, 20 Wash. 512, 56 Pac. 26, where the intervening cases are collected. It has since been approved in *State v. Crawford*, 31 Wash. 260, 71 Pac. 1030. A person of common understanding cannot mistake its meaning. No more is required under the code. Bal. Code, § 6840.

Finally, it is urged that the verdict is contrary to law and the evidence. Our review so far shows that we have found no error of law prejudicial to the appellant. There was evidence to sustain all the material allegations contained in the information. The jury has resolved the fact against appellant, and it is not for us to say that it is not so.

The judgment of the trial court is affirmed.

RUDKIN, C. J., GOSE, MORRIS, and FULLERTON, JJ., concur.