[No. 13504.  Department Two.  February 2, 1917.]

THE STATE OF WASHINGTON, *Respondent*, v. HIRAM D.
LANCE, *Appellant*.[1]

CRIMINAL LAW—APPEAL — REVIEW — VERDICT.  Where there was
substantial evidence to support every material fact necessary to sus-
tain a verdict of guilty, and the trial court has refused to interfere,
the verdict is conclusive on appeal.

HOMICIDE—SELF-DEFENSE—EVIDENCE—QUESTION FOR JURY.  Upon a
plea of self-defense, in a prosecution for homicide in which there
was evidence tending to show that the accused intended to take a
child from the custody of another, at any hazard, armed himself
with a revolver, entered the house without warning, and the killing
thereafter ensued, it was proper to leave to the jury the question
whether the accused was unlawfully in the house where the affray
occurred or whether his going there was lawful.

CRIMINAL LAW—APPEAL—INSTRUCTIONS—REASONABLE DOUBT.  An
instruction upon the subject of reasonable doubt to the effect that
the jury could take into consideration the strong probabilities of the
case, while subject to criticism standing alone, is not prejudicial
when, taken with its context, it could not have misled the jury.

SAME—TRIAL—INSTRUCTIONS.  It is proper to instruct the jury
to disregard any statements made by counsel concerning the evi-
dence, unless they found the statement to be borne out by the evi-
dence.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered June 7, 1915, upon a trial
and conviction of manslaughter.  Affirmed.

*E. C. Dailey* and *Clifford Newton*, for appellant.

*O. T. Webb* and *Percy Gardiner*, for respondent.

FULLERTON, J.—The appellant was informed against for
the crime of murder in the first degree.  The jury found him
guilty of manslaughter.  From the judgment pronounced
upon the verdict, he appeals.

The facts, in so far as they are undisputed, disclose that
appellant had married a niece of the person killed; and two

[1]Reported in 162 Pac. 574.

children, both boys, had been born of the marriage. The appellant and his wife had separated, the wife on leaving taking with her the two children. The deceased lived at the home of his brother, and at this home the wife had left one of the children. The appellant, learning of the whereabouts of the child, armed himself with a revolver and went to the house ostensibly to get possession of the child. On entering the house, he met the person afterwards killed, and a scuffle followed, during which the shot was fired by the appellant which resulted in the death. As to which of the persons began the immediate affray, there is dispute in the evidence between the appellant and the witnesses residing in the house. There is, however, evidence in the record tending to show that the appellant had made threats to do bodily harm to the persons having the custody of the child if it was not delivered over to him, that he was the aggressor in the affray, that he entered the house in a hurried manner, without warning, with the revolver in his hand, and began the assault immediately upon meeting the deceased. There is evidence also to the effect that appellant had sought the advice of certain county officials of Snohomish county concerning his right to possession of the child, and had been advised by them that he had a right to such possession. It does not appear, however, that he was advised as to the methods to which he could lawfully resort in order to obtain possession of the child; much less does it appear that he was advised that the method resorted to by him was a lawful method, or that he would be justified in resorting to force of any kind.

The appellant first contends that the evidence is insufficient to justify the verdict; but without further reviewing the record, we are satisfied that there is substantial evidence tending to show every material fact necessary to be shown in order to sustain the verdict found. This is as far as the appellate court may legitimately inquire. The weight of the evidence was for the jury, and, when it is found that every material fact necessary to be proven has support in the evidence and

that the trial court has refused to interfere, the verdict is conclusive.

It is next assigned that the court erred in its instructions to the jury. The first of these of which complaint is made is the instruction on the law of self-defense. The instruction as a whole is as follows:

"You are further instructed that a person need not be in actual imminent peril of his life or limb or of great bodily harm before he may defend himself. It is sufficient if he, in good faith, has a reasonable belief from the circumstances that appear to him at the time that he is in imminent peril or danger, and if he honestly believes such to be the case, then he has a right to act in self-defense. When a man without fault on his part is suddenly and violently assaulted under circumstances such as to induce or cause in his mind an honest belief or a reasonable apprehension that he is in danger of life or limb and the assault is of such a character as to make an attempted retreat hazardous, he may use the necessary force to prevent the threatened injury; and, where one is assaulted at a place where he has a right to be, he need not retreat, but he may stand his ground and defend himself and repel force by force even to the extent of taking life. However, in relation to the law of self-defense, one cannot claim its benefits after he has intentionally placed himself where he knows or believes he will have to invoke its aid. Circumstances justifying assault for the purposes of self-defense must be such as to render it unavoidable. If you believe from the evidence beyond reasonable doubt that the defendant could have avoided any conflict between himself and Robert Preshaw without increasing the danger to himself, it was his duty to avoid such conflict and so render a resort to the law of self-defense unnecessary. The right of self-defense is based upon the broad ground of necessity which is evidenced by a real or apparent exhibition of force, superinducing a reasonable apprehension of imminent danger which justifies the use of force to repel force, but without such necessity the right to resort thereto does not exist. If you find from the evidence in this case that, at the time and place alleged in the information, the defendant had a right to be at the place where the evidence shows him to have been and that he honestly believed himself to be in imminent danger of life or limb or of

great bodily harm at the hands of said Robert Preshaw,
whether he was in actual danger or not, and that he was with-
out fault, then I instruct you that it will be your duty to
acquit the defendant."

Commenting on the instruction, the appellant, in his brief,
uses this language:

"Defendant excepts to instruction No. 10, for the reason ·
that, as stated therein, it leaves the jury to infer that the
act of going into the house of T. B. Preshaw on the part of
the defendant intended placing himself where he knew or be-
lieved he had to invoke the aid of self-defense, and left the
jury so to determine. The court erred in failing to tell the
jury that the mere act of going to the Preshaw home to
get the child was not of itself a crime, or was not doing
wrong, and left the jury to conjecture and say that it was
criminal tö go into the home of another, even though to ob-
tain possession of one's child."

If we understand the appellant, it is meant to be asserted
that the instruction left it for the jury to say whether or not
the appellant, at the time of the affray, was lawfully at the
house where the deceased˙resided; while, on the contrary, the
court should have instructed them that the appellant was law-
fully in the house and that he committed no offense in going
to the house for the purpose of obtaining possession of his
child.

But we think the instruction was as favorable to the ap-
pellant as the facts warranted. Conceding that the appel-
lant's right to˙ the custody of the child was superior to the
right of the persons with whom the mother of the child had
placed it, the appellant had no right to resort to force or
violence to obtain its custody. He could lawfully go in a
peaceable manner to the house of its possessor and demand
the custody of the child, and take it away if consent was given
him to do so. Or he could lawfully go to the house and take
the child, even without the consent of the persons having its
custody, if he could do so in a peaceable manner. But this
marks the extent of his right. He, like every one else, must

assert his rights through the lawful channels, through the tribunals which the law has provided for the determination of conflicting rights; he cannot become a law unto himself. So if here, as there was evidence tending to show, the appellant intended to take the child at any hazard, armed himself with a revolver, went to the house of the person in whose custody the child was, and entered the house without warning with the revolver in his hand, his going was not lawful, he was wrongfully in the house, and he could not justify the killing of a person therein on a plea of self-defense, even if an assault was made upon him by such person, no matter how aggravated the assault may have been or how much he may have believed his life to be in danger. He was at least guilty of manslaughter, the crime of which he was convicted. As said by Mr. Wharton:

"If the defendant in any way challenged the fight, and went to it armed, he cannot afterward maintain that in taking his assailant's life he acted in self defense." 1 Wharton, Criminal Law (11th ed.), § 613.

So Mr. McClain, in his work on Criminal Law, § 309:

"One may, by his conduct, put himself so far in the wrong that he is not afterwards excusable for acting in self-defense, even though he is put in peril. If by his wilful, wrongful act, he brings about the necessity for killing to save his own life, he will not be excused. . . . It has even been said that one who provokes a difficulty with abusive language, or seeks a quarrel, will not be excused in defending himself against violence which he has thus incited, though in such case, if his original intention was not to kill or inflict grave bodily injury, the necessity which afterwards arises for taking life may reduce the homicide to manslaughter."

See, also, from our own decisions: *State v. Cushing*, 14 Wash. 527, 45 Pac. 145, 53 Am. St. 883; *State v. McCann*, 16 Wash. 249, 47 Pac. 443, 49 Pac. 216. It was proper, therefore, for the court to leave it to the jury to say whether the defendant was lawfully in the house where the affray occurred, or whether his going to the house was lawful.

The second objection is to the instruction on the question of reasonable doubt. In defining what constituted a reasonable doubt, the court made use of this sentence:

"You are required to decide the question submitted to you, whether the defendant is guilty or not guilty, upon the strong probabilities of the case as disclosed to you by all the evidence given before you."

The sentence formed a part of a somewhat extended instruction, and while, if taken alone, it might be subject to criticism, it becomes harmless when read with its surroundings. It was used along with other sentences in an effort on the part of the court to instill into the minds of the jury the meaning of the phrase "reasonable doubt." While it could properly have been omitted, we are convinced that the jury were in no way misled by it or the appellant prejudiced. A similar use of a similar phrase was noticed by us in *State v. Quinn*, 56 Wash. 295, 105 Pac. 818, and held not to be prejudicial.

The third objection is to an instruction wherein the court told the jury that they were to disregard any statements made by counsel concerning the evidence unless they found the statement to be borne out by the evidence. This did not constitute error. On the contrary, an instruction to the same purport was distinctly approved by us in *State v. Burton*, 27 Wash. 528, 67 Pac. 1097.

We find no substantial error in the record, and the judgment will stand affirmed.

Morris, Mount, Holcomb, and Parker, JJ., concur.