[Crim. No. 997. Third Appellate District.—October 14, 1927.]

## THE PEOPLE, Respondent, v. WARIAMA SINGH, Appellant.

George E. Gardner for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, Acting P. J.—The defendant was charged by information filed in the superior court of Butte County with the crime of assault with a deadly weapon with intent to commit the crime of murder. The jury before and by whom the cause was tried found the accused guilty of the crime

of assault with a deadly weapon. He made a motion for a new trial, which motion was denied, and he brings the case to this court on appeal from the judgment and the order denying said motion.

The defendant for a reversal submits and insists upon the validity of but one point, to wit: That the court erred, to the prejudice of his rights, in overruling his objection to the testimony of the prosecution's witness, Sixt, that in or near the month of June, 1925, the defendant, speaking to said witness of the assaulted party, one Banta Singh, declared that he (defendant) did not like Banta Singh, and that he (defendant) "would kill said Banta if he (said Banta) took any more wood." The grounds of the objection to said testimony were that it was "irrelevant, immaterial, incompetent and too remote."

The defendant interposed as in resistance to the crime charged against him the plea of self-defense. The People claimed that the assault was wholly unprovoked and without excuse. Testimony was introduced in support of the respective antithetical theories. Thus the importance to the People's case of testimony disclosing that the defendant had, prior to the time of the commission of the assault, nursed a feeling of bitter antipathy towards Banta Singh, the assaulted party, and had, prior to said time, threatened to kill or inflict bodily injury upon the person of Banta Singh, is plainly apparent, and will be the more conspicuously exposed by a brief reference herein to the evidence disclosing the immediate circumstances leading to and culminating in the assault as detailed by a number of persons that witnessed the near tragedy and testified on behalf of the People. First, it may be noted that, as is to be implied from the fact that the point above indicated involves the single and only ground upon which the conclusion reached below is attacked, no question as to the sufficiency of the evidence to support the verdict is here raised.

A recital of the facts in a general way will be based upon the testimony given for the People by certain parties who witnessed the assault, there being no substantial divergence in the stories of the assault as told by them.

Both the defendant and the party upon whom the assault charged is alleged to have been made are Hindus. At the time the assault was committed, and for some time prior

thereto, the assaulted party, Banta Singh, to whom, for brevity and convenience, we will hereinafter refer as "Banta," was and had been foreman on an orchard situated near East Biggs, in Butte County. The defendant was in the employ of one C. S. Hickson, an orchardist, whose orchard was situated east and about three-quarters of a mile from the ranch or orchard on which Banta was employed. The assault occurred early in the afternoon of February 15, 1927. Rain was falling on that day, and for that reason work on the ranch was suspended pending cessation of the rain. Banta and five other Hindus were gathered in the house and alternately engaged in talking, reading, and playing at cards. One Thada Singh had gone to Banta's house to procure some milk. None was to be had, and he thereupon started to leave the premises, and, as he stepped outside the house, he observed the defendant leading two cows along the road running in near proximity to and parallel with the ranch on which Banta was employed and residing. About the head of each cow was a halter, to which was attached a long chain for the purpose, presumably, of tethering the animals. Thada, recognizing the cows as being the property of Banta, or the party by whom the latter was employed, exclaimed, in a voice loud enough to be heard by the parties then in Banta's house, that defendant (calling him by name) was leading away Banta's cows. The parties in the house immediately stepped into the yard, Banta leading and proceeding in the direction of where the defendant stood holding the chains attached to the animals until he had reached a point twelve or fifteen feet from the defendant. Banta asked defendant what he was doing or intended to do with the cows. Defendant replied, saying that the cows had been on the premises of his employer eating his hay and feed and otherwise damaging the property. Banta answered by saying that if defendant's employer had been damaged by his cows he (Banta) would pay therefor. Thereupon the defendant drew a revolver from his pocket, and as Banta turned his back and started to return to the house, the defendant fired at him, the bullet striking Banta in the back. Banta fell to the ground and defendant fired a second shot at the former while he was lying prostrate upon the ground, the bullet striking and entering Banta's right arm. Some of the friends of Banta

(those who had been in the house with him) then grabbed the assailant and tried to wrench, and finally, after much scuffling and one of the parties had struck defendant on the head with the milk pail, succeeded in wrenching the weapon from the latter's possession. While the scuffling was in progress the defendant fired the pistol three times, shooting "at random," as two of the witnesses described it. In the meantime, others of the parties present engaged in assisting Banta, who was unable to walk, to the house. The defendant was held by the parties witnessing the assault until the arrival of the constable of the township, for whom a messenger had been dispatched. The constable, on his arrival, placed defendant under arrest and took him to the county jail. Banta was conveyed to the county hospital at Oroville. It is not necessary to describe in detail the nature of the wounds received by Banta as the doctor attending him described them on the witness-stand. It is sufficient to say generally that the doctor found that the lower extremities of the wounded man were paralyzed to an extent which made it impossible for him to move them, and, further, that the bowels and urinary organs were paralyzed so that they refused to function without the aid of artificial appliances. The doctor performed an operation on the spine. After the operation Banta was able to move his feet slightly. The doctor expressed the opinion, however, that the injured man would never again be able to walk. At the time of the trial in the latter part of June, 1927, over four months after he was wounded, Banta was brought to the courthouse on a cot or stretcher to testify, and was then unable to use his lower limbs. Banta Singh testified that at the time he was assaulted he had no weapon of any kind or character upon his person and that he made no demonstration of a hostile character toward the defendant. This testimony was corroborated by all the Hindus who were present at the time of the trouble, they having testified that they examined the coat and clothing of Banta immediately after he was carried into the house and found no weapon in any of the pockets thereof.

Other than some testimony of incriminatory admissions of defendant after the assault was committed and the testimony regarding threats asserted to have been made by defendant to commit violence upon Banta Singh previous to the time

of the trouble, the above statement embraces a general recital of the facts brought out by the People.

The story of the defendant, corroborated in some particulars by several white witnesses who were not far distant from the scene of the trouble when it occurred, was that he found the cows referred to grazing in the barley field of his (defendant's) employer; that he caught the cows and by means of the chain attached to one of them, he led the cows out of the field to the road spoken of above; that, when near Banta's house, he tied the cows to a tree, and that about this time Banta Singh, closely followed by Nata Singh (one of the Hindus in Banta's house at the time) approached the point where the defendant stood; that the other Hindus in the house soon made their appearance; that Banta ordered his friends to get hold of defendant, and thereupon several of the parties surrounded defendant, got hold of him, and while several began beating and kicking him about the body, another struck him over the head a number of times with a large milk can or pail; that he attempted to defend himself, but was unable to resist or overcome the combined attack of the Hindus, and, realizing this, he took his revolver from his pocket and fired several times, with the result as indicated. That the defendant was violently beaten and struck on and about his head and body was declared to be true by the doctor who attended and treated him immediately following his incarceration in jail.

It will be observed from the facts adduced before the jury by the People and the defense set up by the accused and the testimony presented by him in support thereof that, as above stated, testimony tending to show that the accused had for a long time entertained and cherished a feeling of ill will toward Banta Singh and at times had threatened to do him bodily injury, was of singular importance, in that it would strongly tend to support the theory of the People that the assault was committed as described by the witnesses for the People and was entirely without any justification whatever. If, therefore, the objection by the defendant that the testimony tending to show such ill feeling and threats was for any reason incompetent is legally sound, it could not then well or justly be said that prejudice against the accused had not resulted from the ruling of the court allowing such testimony. But the testimony to which objection was made

at the trial and is urged here was neither immaterial nor irrelevant nor incompetent. The only possible question is whether the time at which such alleged threats were made was too remote to the time at which the assault was committed to render it a proper matter to go before the jury. It is, though, very clear that the court was right in allowing the testimony. The objection addresses itself to the weight of the testimony rather than to its competency or relevancy. There was no testimony introduced by the defense tending to show that the ill feeling, if any there was, existing in the accused against Banta Singh, or between the two, had ever been composed or so settled as to render their relations uniformly friendly and amicable down to the time of the assault. The jury, believing the testimony as to such ill feeling and threats, as we may assume that they did, could justly infer that the hostility expressed by the defendant against Banta Singh some year or two prior to the date of the assault was still nourished in the breast of the defendant. At any rate, the testimony was, as stated, proper for the jury to consider and give to it whatever weight they might in their judgment believe it to be entitled to. We have not found any divergence in the cases upon the proposition that the length of time elapsing between the time that threats by the defendant to do bodily injury to a party and the time at which the injuries were committed by the former upon the latter itself rendered the testimony of such threats incompetent or inadmissible in the trial of the assaulting party upon the charge of committing such assault. In other words, the cases, so far as our investigation has gone, have uniformly held that testimony of threats because of remoteness will not be excluded. (See *Hardy* v. *Commonwealth,* 110 Va. 910 [67 S. E. 526]; *State* v. *Quinn,* 56 Wash. 295 [105 Pac. 818, 821]; *State* v. *Gates,* 28 Wash. 689 [69 Pac. 385]; 10 Cal. Jur., p. 1140, sec. 360.)

It may be added that another witness testified of threats similar to those above spoken of made by the defendant against Banta Singh as late as December, 1926, which was two months only prior to the commission of the assault.

The fact that the witness Sixt could not definitely fix the particular month in the year 1925 that he claimed to have heard defendant make threats against Banta Singh did not render testimony of such threats inadmissible. That

fact went only to the weight of the testimony and involved the question, which could have been made an issue by cross-examination, to be determined by the jury, whether the witness' memory as to the particular threats made was sufficiently accurate to constitute the testimony dependable. The cases cited by counsel for the defendant regarding the admissibility of testimony of threats by an accused against the party upon whom the crime charged against the former was committed are not at variance with the conclusion herein arrived at upon the proposition in hand.

The judgment and the order are affirmed.

Plummer, J., and Weyand, J., *pro tem.*, concurred.