[No. 4455.   Decided December 6, 1902.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN W. ELLIS, *Appellant*.

30  369
e31  264

MURDER — SELF-DEFENSE — EVIDENCE — REPUTATION   OF   DECEASED —
ADMISSIBILITY.

In a prosecution for murder, where the plea of self-defense was interposed, it was error to exclude testimony as to the general reputation of the deceased as to resorting to the use of firearms and other deadly weapons when engaged in quarrels, although defendant's knowledge thereof had not been previously shown as a foundation for such proof, where the only objection to the question was general and not merely to the order of the proof.

SAME.

Evidence of the habit and reputation for carrying and using deadly weapons may be received where the nature of the defense indicates that the defendant had reasonable apprehensions of great danger to his person, and the exclusion of such evidence will not be held to be without prejudice because of the fact that ample testimony of the reputation of the deceased as an aggressive, quarrelsome, dangerous, fighting man had been introduced.

SAME — APPARENT DANGER — INSTRUCTIONS.

Where the defense of justifiable homicide is interposed, it was error to charge the jury that they could not consider threats against defendant nor the dangerous character of the deceased, unless they found that immediately preceding the killing the deceased had committed some overt act towards carrying his threats

24-30 WASH.

into execution, or had made an attack upon the defendant of such a character as would justify the defendant in using deadly weapons in repelling the same, since it is sufficient to excuse homicide if the danger be apparently imminent.

Appeal from Superior Court, Kittitas County.—Hon. FRANK H. RUDKIN, Judge. Reversed.

*Graves & Englehart,* for appellant.

*Clyde V. Warner,* Prosecuting Attorney, *H. J. Snively* and *Austin Mires,* for the State.

The opinion of the court was delivered by

REAVIS, C. J.—Defendant was charged in the superior court of Kittitas county with murder in the first degree, and he was convicted of manslaughter. At the trial the fact of the homicide was admitted. The plea of self-defense was interposed by the defendant, and this was the only issued tried. Evidence was given tending to show that deceased had the general reputation of a dangerous, quarrelsome, and fighting man; that he had before threatened to kill defendant; that such reputation and threats were known to defendant before the shooting, and that deceased had several times made such treats to defendant; that on the day of the homicide, and a few hours prior to its occurrence, deceased challenged defendant to settle their dispute "by shooting it out;" that at the same time he held a pistol in his hand, and that defendant at the time kept deceased "covered" with a pistol. Witnesses were produced by defendant who testified to the general reputation of deceased, and, as the record here shows, the following question was propounded to each: "Do you know the general reputation of deceased, during such times, in such communities, as to being an aggressive, quarrelsome, dangerous, fighting man, and, when engaged in quarrels and

fights, his reputation and his habit as to using fire-arms and other deadly weapons ?" Objection was sustained to the following porton of the question: "and, when engaged in quarrels and fights, his reputation and his habit as to using fire-arms and other deadly weapons." The question, as amended, was then answered by each witness, "Yes." The following question was then propounded by defendant to each of said witnesses: "What was that reputation, good or bad ?" To which each of said witnesses answered, "Bad." The following question was then propounded by defendant's counsel to each of said witnesses and to defendant: "Do you know the general reputation and the habit of the deceased, during the times and in the communities you have stated, as to resorting to the use of fire-arms and other deadly weapons when engaged in quarrels ?" To which question the state by its counsel objected, and such objection was sustained by the court. The defendant testified that just preceding the shooting deceased accosted him with threats and "spit in his face," and made a gesture as if to draw a pistol. The court at the request of counsel for the state gave the following instructions:

"1. I instruct you that if you believe from the evidence that deceased threatened to take the life of the defendant prior to the alleged killing, that this would give the defendant no right to take the life of the deceased, unless you further believe that at the time of the alleged killing the deceased was making or immediately preceding the killing had committed some overt act towards carrying such threats into execution.

"2. I instruct you that the evidence respecting the dangerous character of the deceased can only be considered by you in the event of your finding from the evidence that deceased was making or had made, immediately preceding the alleged killing, an attack upon the defendant of such a

character as would justify the defendant in using deadly weapons in repelling the same."

1.   The defendant assigns as errors the rejection of the evidence of the reputation of deceased for, and his habit of, using fire-arms and deadly weapons in quarrels and fights, and the giving of the two instructions set out above, and also misconduct of a juror.   It is urged by counsel for the state that a proper foundation was not laid for the introduction of the evidence relating to the reputation of the deceased for carrying and using weapons in his quarrels, in that it was not shown that defendant knew such reputation and habits.   But the objection to the question was general and not merely to the order of the introduction of proof.   It may also be observed that such evidence may tend to enlighten the jury as to who was the aggressor in the rencounter.   *State v. Cushing,* 14 Wash. 527 (45 Pac. 145, 53 Am. St. Rep. 883).

It is readily perceived that the real issue at the trial was, did the facts as they appeared to the defendant at the time of the homicide justify an ordinarily prudent man in believing he was in imminent danger of death or serious bodily injury ?   If they so appeared to the defendant, he was excused for the commission of the homicide.   The right of self-defense permits one to act honestly upon the apparent danger to which he is exposed at the time.   It seems that evidence of the habit and reputation for carrying and using deadly weapons may be received where the nature of the defense indicates that the defendant had reasonable apprehensions of great danger to his person, and they are pertinent for the same reason that general reputation of bad character and threats uttered by the deceased are received.   The rule is well stated in *Quesenberry v. State,* 3 Stew. & P. 308, as follows:

"If the killing took place, under circumstances that

could afford the slayor no reasonable grounds to believe himself in peril, he could derive no advantage from the general character of the deceased for turbulence and revenge. But, if the circumstances of the killing were such as to leave any doubt whether he had not been more actuated by the principle of self-preservation than that of malice, it would be proper to admit any testimony calculated to illustrate to the jury the motive by which he had been actuated."

It is also very generally approved: *Horbach v. State,* 43 Tex. 242; *Daniel v. State,* 103 Ga. 202 (29 S. E. 767); *State v. Graham,* 61 Iowa, 608 (16 N. W. 743); *Payne v. Commonwealth,* 1 Metc. (Ky.) 370; *Moriarty v. State,* 62 Miss. 654; *State v. Elkins,* 63 Mo. 159.

The defendant's testimony made the evidence tendered relevant and material. *State v. Cushing,* 14 Wash. 527 (45 Pac. 145, 53 Am. St. Rep. 883).

It is suggested by counsel for the state that ample testimony to the reputation of the deceased as an aggressive, quarrelsome, dangerous, fighting man was introduced, and that the exclusion of the evidence relating to his reputation and habit of carrying and using deadly weapons when engaged in quarels was inconsequential, and worked no prejudice to defendant. But it is apparent that a man who habitually carries and uses such weapons in quarrels must cause greater apprehension of danger than one who does not bear such reputation and does not have such habits. The vital question is the reasonableness of the defendant's apprehension of danger, and his good faith in acting upon such apprehension. The jury are entitled to stand as nearly as practicable in the shoes of defendant, and from this point of view determine the character of the act. The exclusion of the evidence tendered in this regard was error.

The general instructions given by the court stated fairly the law of self-defense, but the two set out above and ob-

jected to by defendant are defective and misleading.    It is the imminent *apparent* danger, not *real*, the jury must find to excuse the homicide.    The two instructions taken together require the finding by the jury of a preceding attack or overt act, at the time, before the dangerous character and threats of the deceased can be considered.    On the contrary, the apparent facts should all be taken together to illustrate the motives and good faith of the defendant at the time of the homicide.    As a new trial must be awarded for the two errors discussed, and it is not probable that the controversy over the misconduct of the juror will arise again, and as the last error is assigned upon the facts shown by somewhat conflicting affidavits, such error need not be further noticed.

Reversed and remanded for a new trial.

FULLERTON, MOUNT, DUNBAR and ANDERS, JJ., concur.