[No. 4321.   Decided March 14, 1903.]

THE STATE OF WASHINGTON, *Respondent,* v. W. R. CRAWFORD, *Appellant.*

HOMICIDE — SELF-DEFENSE — EVIDENCE — THREATS.

Where testimony as to a threat made by respondent is relevant, it is for the jury to determine whether or not it proves the fact for which it was introduced, and error could not be predicated on the court's refusal to strike it on the ground that the language testified to did not amount to a threat.

SAME — DYING DECLARATIONS — SURROUNDING CIRCUMSTANCES.

The circumstances under which a dying declaration was made affect its weight and credibility, and hence are admissible in evidence.

SAME — ABSENCE OF MALICE — FEAR OF DECEASED.

In a prosecution for murder, it was error to exclude testimony by the defendant as to whether he had any malicious feelings

toward the deceased, and whether or not he was in fear of the deceased, since his feelings, motives or beliefs would be relevant to the issue of self-defense.

SAME — REPUTATION OF DECEASED.

The general reputation of the deceased as to going armed is admissible in evidence upon a trial for murder, where the defendant interposes the defense of justifiable homicide.

SAME — REBUTTAL — TESTIMONY OF WIFE AS TO DECEASED'S FIRE-ARMS.

In a prosecution for murder, testimony by the wife of the deceased as to the number and character of fire arms he owned, and whether he had any of them with him at the time of the affray, and also as to the time of day he reached home after being shot by defendant, was admissible for the purpose of tending to refute defendant's evidence offered in support of the claim of self-defense.

SAME — APPARENT   DANGER — INSTRUCTIONS — CURING   ERROR   IN CHARGE.

A misstatement in an instruction to the effect that justifiable homicide is the killing of one who "manifestly intends" to commit a felony against the slayer, was cured by the subsequent charge in the same instruction that a person may act in self-defense when he in good faith, and as a reasonable man, has cause to believe that his life is in danger, whether the belief be founded on conditions which are real or only apparent.

Appeal from Superior Court, Kittitas County.—Hon. FRANK H. RUDKIN, Judge. Reversed.

*Pruyn & Slemmons,* for appellant.

*Clyde V. Warner,* Prosecuting Attorney, and *Austin Mires,* for the State.

The opinion of the court was delivered by

FULLERTON, C. J.,—The appellant was charged with the crime of murder in the first degree for the killing of one G. V. Huhn, tried on the charge, and found guilty of manslaughter. He appeals from the judgment and sentence pronounced against him.

A witness on the part of the state was questioned as to a conversation he had with the appellant preceding the homicide, its purpose being to show threats made by the appellant against the deceased. One of the answers was as follows: "Well, he just simply said he had been down seeing Mr. Hayward—if he had given him the land the fence was on that Mr. Huhn had been cutting down—and he said he would go up, and, if he caught Huhn cutting the fence down, he would shoot him." The appellant moved to strike the answer on the ground that the language testified to did not amount to a threat, and assigns error on the refusal of the court to grant the motion. Conceding the contention of counsel as to the effect of the answer to be well taken, it would not be error on the part of the trial court to refuse to strike the answer out. There is no rule of law which requires a trial court to go through the testimony of each witness, and strike out and withdraw from the jury such of it as does not meet the expectations of the party introducing it. Its competency, relevancy, and materiality, are questions for the court, but whether it proves or disproves a particular fact is ordinarily a question within the peculiar province of the jury to determine. In the case before us, this character of testimony being relevant to the issue, whether the fact sought to be established by it was or was not proved by the testimony offered, was a question which the jury had the duty of solving from the testimony as a whole. The court was not called on to say whether particular answers did or did not prove the fact.

The dying declaration of the deceased was allowed to go to the jury, together with the circumstances under which it was made. It is objected that the court erred in permitting these surrounding circumstances to be detailed to the jury. There are cases which seem to sup-

port this contention, but the weight of authority and the
better reason, it seems to us, are the other way. The cir-
cumstances under which a dying declaration is made
materially affect its weight and credibility, and as these
are questions for the jury, it is proper that such circum-
stances should be shown. 10 Am. & Eng. Enc. Law (2d
ed.), 387.

Objections were interposed and sustained to the fol-
lowing questions propounded to the appellant: "You may
state whether or not you had any malicious feelings
towards Mr. Huhn in his lifetime?" "Mr. Crawford,
you may state whether or not you were in fear of this
man?" "I will ask you if you knew the general repu-
tation of the deceased, Huhn, in the community where he
lived, in reference to his going armed?" The last ques-
tion was also propounded to several of the appellant's
witnesses, and objections thereto sustained. The pre-
vailing rule is that whenever the motive, intention, or
belief of a person is relevant to the issue, it is competent
for such person to testify directly upon that point, whether
he is a party to the suit or not. His testimony may be,
and often is, entitled to but little weight, but this is no
reason for its exclusion. He knows what his feelings,
motives, or beliefs were at the particular time, and, when
relevant to the issue, has the same right to testify regard-
ing them as he has to any other relevant fact within his
knowledge. It was error, therefore, to sustain the objec-
tions to the first and second questions quoted. In passing
upon the last of the questions quoted, the court held it
permissible to show what the fact was with reference to
the deceased's going armed, but that it was incompetent
to show what his general reputation in the community
where he had lived was in that regard. A somewhat simi-
lar question was before this court in *State v. Ellis*, 30

Wash. 369 (70 Pac. 963), where it was held error to refuse to permit the defendant to show what the reputation and habit of the deceased was with reference to using firearms when engaged in quarrels. In that case it was said:

"It is readily perceived that the real issue at the trial was, did the facts as they appeared to the defendant at the time of the homicide justify an ordinarily prudent man in believing he was in imminent danger of death or serious bodily injury? If they so appeared to the defendant, he was excused for the commission of the homicide. The right of self-defense permits one to act honestly upon the apparent danger to which he is exposed at the time. It seems that evidence of the habit and reputation for carrying and using deadly weapons may be received where the nature of the defense indicates that the defendant had reasonable apprehensions of great danger to his person, and they are pertinent for the same reason that general reputation of bad character and threats uttered by the deceased are received. The rule is well stated in *Quesenberry v. State,* 3 Stew. & P., 308, as follows: 'If the killing took place under circumstances that could afford the slayer no reasonable grounds to believe himself in peril, he could derive no advantage from the general character of the deceased, for turbulence and revenge. But if the circumstances of the killing were such as to leave any doubt whether he had not been more actuated by the principle of self-preservation than that of malice, it would be proper to admit any testimony calculated to illustrate to the jury the motive by which he had been actuated.' "

The same principle governs here. The motive by which the defendant was actuated when he did the shooting was one of the principal questions at issue, and it was proper to show the reputation of the deceased as to his habit of carrying arms, to illustrate to the jury that motive.

It is urged that the court erred in permitting the wife of the deceased, over the objection of the appellant, to

testify in rebuttal as to the time of day the deceased reached home after being wounded on the day of the affray; also as to the number and character of fire arms he owned, and whether he had them with him at the time of the affray. This evidence was material and competent, we think, in that it tended to refute the appellant's evidence offered in support of his claim of self-defense.

It is assigned that the court erred in refusing to withdraw from the consideration of the jury the question of murder in the first degree and murder in the second degree, and charging the jury that they might find the appellant guilty of either of these degrees of murder. This assignment is based upon the contention that the information charges no higher degree of crime than manslaughter. The information is, in form, substantially that suggested by Chief Justice GREENE in *Leonard v. Territory,* 2 Wash. T. 381 (7 Pac. 872), for charging murder in the first degree, and has been too many times approved by this court to be overthrown now on the ground of its insufficiency. See *State v. Cronin,* 20 Wash. 512 (56 Pac. 26), and cases there cited.

It is assigned that the court erred in giving the following instruction to the jury:

"On the law of self-defense, I charge you that justifiable homicide is the killing of a human being in the defense of one's person against one who manifestly intends, or endeavors by violence or surprise, to commit a felony against another. A bare fear of any of these appearances is not sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the defendant acted under the influence of such fear. If you find from the testimony that the defendant was attacked by the deceased while in the lawful pursuit of his business, it was not necessary that he should retreat from the attack, but he had lawful right

to defend himself against the attack, and to judge of the necessity from the facts as they appeared to him at the time. And if he acted in good faith and as a reasonable man, and had good cause to believe that his life was in danger, or that he was about to receive great bodily harm at the hands of the deceased, and it could only be avoided by taking the life of the deceased, the defendant is not guilty, whether such danger was real or only apparent."

The objection is to the word "manifestly" in the first part of the instruction. It is said that a person has the right to act upon appearances, and may lawfully defend himself against one who apparently intends to inflict upon him a great bodily injury. Undoubtedly this is the rule, and, were the instruction limited to its first and second sentences, is would clearly be erroneous. But the concluding part makes the whole clear. It is there stated that a person may act when he in good faith, and as a reasonable man, has cause to believe that his life is in danger, whether the belief be founded on conditions which are real or only apparent. This is a correct statement of law.

For the errors noted, the judgment is reversed, and the cause remanded for a new trial.

MOUNT, ANDERS and DUNBAR, JJ., concur.