**UNITED STATES of America,**
**Plaintiff,**

v.

**Jacinto MENDOZA–TORRES, Defendant.**
**No. C–20052–Tuc.**

United States District Court
D. Arizona.
May 10, 1968.

---

6. And here relator does not question the competency of his trial counsel. (P.C.H. 13).

Rubin Salter, Jr., Asst. U. S. Atty., Edward E. Davis, U. S. Atty., District of Arizona, Tucson, Ariz., for plaintiff.

Gilbert Gonzalez, Tucson, Ariz., for defendant.

## FINDINGS AND OPINION

KILKENNY, District Judge:

This cause was tried to the Court on March 20, 1968, the defendant appearing in person and by Gilbert Gonzalez, his attorney, the United States appearing by Rubin Salter, Jr., Assistant United States Attorney. Defendant was charged by indictment of the crime of being an alien and being found in the United States after a previous deportation in violation of 8 U.S.C. § 1326.

In major part, the facts are undisputed. Defendant questions the right of the Government to use statements made by the defendant prior to the time of his arrest on the basis that his privilege against self-incrimination was violated and challenges the foundation on which certain documents were admitted in evidence.

Franklin B. Smith, an Immigration Patrol Inspector, stationed at Nogales, Arizona, was performing his customary functions on January 5, 1968, in patrolling with the Border Patrol. At the time he was assigned to bus check, city and highway patrol. The last bus leaves Nogales at 10:15 P.M. After that time he made a patrol around the city streets and headed north on Highway 99, which is the main highway to Tucson. While still on the outskirts of Nogales, on this patrol, he, with his companion, Inspector O'Brien, saw an individual hitch-hiking north. At this point, which was within the confines of the United States, he stopped the automobile and said, "Hello" to the individual, who is the defendant in this case. At the time, Smith was in full dress uniform of the Border Patrol. The officer propounded certain routine questions to the defendant, after first identifying himself. There was nothing unusual about the hitch-hiking of defendant, other than he was on the highway at a late hour and Smith suspected that defendant could possibly be an illegal entrant. The vehicle, driven by Smith, had the special paint marks of the Immigration Department and had a large official insignia on the door, with a red light on the top. At the time the officer did not know whether the defendant was an alien or an American citizen, but assumed that defendant was the latter. While the officer was still in the automobile, the officer asked defendant if he was a "Mexican citizen" or "United States citizen". Defendant responded, "I'm a Mexican citizen." Smith then said, "May I see your passport, please?" and defendant replied, "I don't have a passport." Smith then said, "You don't have a passport?" Defendant, while laughing, said, "I guess I'm what you would call a wetback." Not until then did Smith get out of his automobile. He then told defendant that he was under arrest. The officer then asked for defendant's name and date of birth and advised defendant of his rights as stated on a certain card, which statement of rights I deem to be sufficient and find that defendant was so warned. Defendant had no difficulty in understanding the English language.

For that matter, it would seem that he spoke very good English.

 Defendant argues that the interrogation immediately before the arrest was in violation of the guidelines stated in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defendant relies on the language of this opinion which prohibits the use by the prosecution of any statements made, either exculpatory or inculpatory, stemming from custodial interrogation of the defendant. On the undisputed evidence in the case, I find that the defendant was not in custody, nor was he otherwise, in any way, deprived of his freedom of action in any significant way at the time he answered the initial questions. It is clear that the defendant was then standing on an open highway, that the officers were actually in the automobile. Here, the freedom of action of the defendant had not been curtailed in any notable way at the time he volunteered his statements. A distinction must be drawn between statements uttered by defendant during the investigatory stage and those which may be made after the investigation has reached the accusatory stage. Dayton v. Gladden (9th Cir., April 26, 1968), 394 F.2d 4. Manifestly, the officer was within the area of the performance of his duties in questioning the defendant under the facts here in evidence. 8 U. S.C. § 1357 (a) (1). Both the statute and Escobedo v. State of Illinois, 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), permit this type of out-of-custody interrogation.

 With reference to the statements made by defendant after his arrest, I find that his constitutional rights were explained to him in detail and that he understood those rights. Furthermore, I find that the defendant willfully, knowingly and meaningfully waived his constitutional right to the presence of a lawyer at the time he made such statements.

Defendant's motion to exclude from evidence the statements he made both before and after the arrest is denied.

 Defendant attacks the sufficiency of the foundation the Government presented in connection with the fingerprint record. Officer Smith identified Exhibit No. 2 as the instrument on which he placed the fingerprints of defendant. Detention Guard Del Valle testified it was the custom at the Deporting Center in El Paso, Texas, to place the print of the index finger of the deported alien on the reverse side of the warrant of deportation, plaintiff's Exhibit No. 1. Identification technician Heino, after qualifying as a fingerprint expert, testified that he had compared the print from the back of the warrant of deportation with the prints of the index finger on Exhibit No. 2 and that such prints were identical and made by the same person. At the time of the trial, I reserved ruling on Exhibit No. 1, but now admit it in evidence as an official record of the Department of Justice, carrying the Seal of the Department. Moreover, a copy of the said deportation warrant, with the fingerprints on the reverse side, is attached as Exhibit D to Government's Exhibit 5, the transcript of the hearing in the deportation proceedings. These records were admissible. 28 U.S.C. § 1733 (a).

 The attack on the qualifications of the fingerprint expert is without merit. Moreover, the qualifications of the identification technician are sufficient.

 On the entire record, I find: (1) that defendant is, in fact, an alien born in Porvenir, Chihuahua, Mexico; (2) that he had been deported; (3) that he did not have the authority of the Attorney General of the United States to reenter; and (4) that he reentered and was found in the United States without the permission of the Attorney General.

I have carefully examined the ten specifications set forth in defendant's motion for judgment of acquittal. Each is without merit.

The Government has proved the defendant guilty beyond a reasonable

doubt of the crime charged in the Indictment.

The recent Supreme Court case of Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381, May 6, 1968, has received my careful consideration. The decision, in my opinion, is not applicable to these facts. There, Mathis was in custody at the time of the interrogation.

The matter is referred to the Probation Department for a pre-sentence report. Formal announcement of the verdict and date of sentencing will be fixed on receipt of the report.