[No. 135-41259-1.    Division One.    May 18, 1970.]
Panel 1

THE STATE OF WASHINGTON, *Petitioner*, v. LARRY LISTER *et al., Respondents.*

*Charles O. Carroll, Prosecuting Attorney,* and *Darrell E. Lee, Deputy,* for petitioner.

*Maslan & Hanan, J. Stephen Funk, Miller, Howell & Watson,* and *John M. Watson,* for respondents (appointed counsel for appeal).

FARRIS, J.—On the 24th of September, 1968, the attendant of a gas station in the city of Kent was robbed at gunpoint. Larry Lister and Ernie Chandler, Jr., were thereafter charged with the crime of armed robbery. Following a nonjury trial on February 4 - 10, 1969, the trial court announced its oral decision: the defendants Larry Lister and Ernie Leo Chandler, Jr., were guilty as charged. Prior to the entry of findings of fact, conclusions of law, and judgment, the trial court indicated its concern over whether some of the state's evidence was properly admitted. Thereafter, the judge entered an order granting the defendants a new trial. The propriety of the order granting a new trial is before this court on a writ of certiorari.

The question is whether certain evidence should have been suppressed because of a failure to advise the defendants of their constitutional rights as prescribed in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

The defendants were in an automobile driving north from Kent at approximately 1:35 a.m., a short time after the robbery, when they were stopped by a state patrolman and two Renton police officers using their emergency equipment. They ordered the driver of the car, Lister, to approach the patrol car while a Renton police officer stood guard at the rear of defendants' automobile with a shotgun. The state patrol vehicle was some 75 feet in front of the defendants' car, a Renton police car was some 20 feet to the rear and a second Renton police car was immediately behind the first. The questioning took place on the outside of the police vehicles and only Lister was directed to step outside of the defendants' vehicle. The two other passengers were asked their names and addresses while they remained inside of their car. There was no extensive questioning of the defendants. The police looked into the defendants' vehicle from the outside; they did not enter the

car nor did they direct the passengers to step outside. The trunk of the automobile was not opened. At some point in the proceedings, one of the defendants stated to a Renton police officer that they had been in Kent, seen police cars in the area and left. The officers permitted the defendants to go on their way after recording their names and addresses. This occurred approximately 10 to 15 minutes after the defendants were stopped. The defendants were later apprehended and identified (in a lineup) as the robbers, by the victim.

Although the defendants were never advised of any constitutional rights, the state was allowed, at the trial, to admit into evidence (1) the fact that the defendants had identified themselves and had given their addresses when they were stopped on the highway; (2) the names and addresses given by the defendants at the time of the stop; (3) admissions by the defendants that they had been in Kent at the time of the robbery and; (4) the lineup identifying the defendants as the persons who committed the robbery. The trial court concluded, subsequent to announcing its oral decision, that all information obtained by the officers should have been suppressed along with the "fruit from the poisonous tree", *i.e.*, the lineup identification.

The Supreme Court stated in *Miranda,* 384 U.S. at 477:

> The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way.

The state argues that no arrest was made. It is not disputed that the defendants were permitted to go on their way after the questioning. Whether or not a formal arrest was made is not the issue. Such a requirement would encourage an officer who wished to avoid the warning to simply delay formal arrest until after questioning is completed.

The *Miranda* decision provides further:

General on-the-scene questioning as to facts surrounding

a crime or other general questioning of citizens in the fact-finding process is not affected by our holding.

*Miranda*, 384 U.S. at 477.

■  The question is whether the evidence was obtained as a result of "custodial interrogation" as that term is defined in the *Miranda* decision. Questioning of a suspect by a police officer does not always constitute "custodial interrogation."[1] *See State v. Creach*, 77 W.D.2d 194, 461 P.2d 329 (1969) where the defendant was asked to accompany the police officer to the sidewalk where he was questioned; *United States v. Mendoza-Torres*, 285 F. Supp. 629 (D. Ariz. 1968) where officers sat in a car and questioned the defendant who stood outside; *United States v. Montez-Hernandez*, 291 F. Supp. 712 (E.D. Calif. 1968) where one officer stood on each side of a car with defendants inside; and, *United States v. Gibson*, 392 F.2d 373 (4th Cir. 1968) where the defendant was questioned on the sidewalk. *But see Orozco v. Texas*, 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095 (1969), where the United States Supreme Court ruled that a suspect interrogated by several police officers in his residence had been deprived of his freedom in a significant way.[2]

The Miranda rule was announced to safeguard the privilege against self-incrimination. It is to protect the constitutional right against self-incrimination at the only time that it can be effectively protected, that is, at the first opportunity to violate it.[3]

The question then is whether the privilege against self-incrimination was violated when each defendant identified himself and gave his address in the absence of a warning in clear and unequivocal terms (1) that he had a right to remain silent, (2) that any statement that he does make

[1] See 31 A.L.R.3d 565, 577 for annotation on custodial interrogation.

[2] It was this ruling by the Supreme Court that prompted the trial judge to reexamine the evidence in the case before us. Although *Miranda* was not extended by *Orozco*, its application to non-station house interrogation was clarified.

[3] *See*, Comments, *Privilege Against Self-Incrimination: The Scope and Application of Miranda*, 37 U. Mo. L. Rev. 260 (1969).

can and will be used as evidence against him (3) that he has a right to consult with and have present prior to and during interrogation any attorney either retained or appointed and (4) that if he cannot afford an attorney, one will be appointed for him prior to any questioning, if he so desires. The rule is clear; each of these warnings must be given.

We are satisfied that *Miranda* allows certain reasonable inquiries, not designed to elicit incriminating statements, to be made before any warnings must be given. We are also satisfied that police officers may take reasonable precautions to protect themselves while investigating a crime.[4] Such precautionary measures do not of themselves create the "potentiality of compulsion inherent in the in-custody interrogations." *See State v. Creach, supra.* Error comes when the questioning process shifts from investigatory to accusatory.

We find nothing in the *Miranda* decision that precludes a police officer, within a reasonable time after a crime has been committed and within a reasonable distance from its occurrence, from stopping a suspect on a public street while using reasonable precautions for his own safety, and obtaining the identity of the suspect in the course of a routine investigation of a crime, prior to warning that suspect of his constitutional rights.[5]

A different question is presented by the admission

---

[4]*See State v. Lane,* 77 W.D.2d 872, 467 P.2d 304 (1970), where the Supreme Court held that it was not a violation of the constitutional rights of the accused to ask "Do you have the gun?" even though he was in custody at the time and had not been given the required Miranda warnings, since the question was asked "for one reason only —the physical protection of the police."

[5]*See Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), where the Supreme Court affirmed a conviction on the basis of the reasonableness of the search and seizure even though there was no finding of probable cause that (1) a crime had been committed or (2) a crime was in the process of being committed or (3) a crime was about to be committed.

*See also* 25 A.L.R.3rd 1081 for annotation on the applicability of *Miranda* to traffic offenses.

that the defendants were in Kent at the time of the robbery.

The rule is not in dispute:

Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Miranda,* 384 U.S. at 478.

The trial court did not make a finding of fact as to how the admission by the defendants, that they were in Kent at the time of the robbery, was made. A spontaneous admission is outside of the Miranda rule. *See Sablowski v. United States,* 403 F.2d 347 (10th Cir. 1968); *See also State v. Bradford,* 434 S.W.2d 497 (Mo. 1968) and *United States v. Thomas,* 396 F.2d 310, 313 (2d Cir. 1968).

Officer Romano of the Renton Police Department testified:

A I told— I believe I told the driver and the passengers sitting in the back seat that they fit the description of people involved in a stickup in Kent and that was the reason why we had stopped them. And they stated that they realized that there was something going on in Kent. . . . Q You told the people in the back seat of this car they fit the description, is that correct? A The one— the two subjects—I don't recall whether—I thought one of them was talking to him and two subjects left in the car at that time, or just before—I think it was while the two subjects were left in the car I stated to them—they were asking, "Why are we stopped," and I said, "Because you fit the description of a stickup that just occurred in Kent," and we felt that they were the ones that did it.

Defendant Chandler testified as follows regarding the admission:

Q And what did you do next, if you recall then, after you were stopped? A He was waving Larry to come up there. Q And then what happened? A Larry gets out of the car and comes up there, and he checks out Larry's driver's license, and between the policeman at the back door, you know, I don't know which policeman it was, but there was an officer at the back door, and I believe I rolled down my window and asked him what was wrong.

And I believe he told me there was a robbery or, I don't know if he told me anything.

Defendant Lister did not testify on the question. Measuring this testimony against the rule, we are satisfied that the statement was volunteered and therefore admissible into evidence.

It was not error to admit the fact that the defendants identified themselves when they were stopped on the highway and to use this information to locate the defendants for subsequent proceedings. The lineup identifying the defendants as the persons who committed the robbery was not improper on the theory that the lineup was "fruit of a poisonous tree." No other questions regarding the lineup are raised on this appeal nor do we make any ruling on that question. Whether a new trial should have been granted on other grounds is not before this court.

The cause is remanded to the trial court for further proceedings consistent with this opinion.

JAMES, C. J., and SWANSON, J., concur.