[No. 1106-1.    Division One—Panel 1.    July 3, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES HENRY CLOUD, *Appellant.*

*Halverson & Strong* and *Lowell K. Halverson,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Ronald H. Clark, Deputy,* for respondent.

CALLOW, J.—At the unlikely hour of 8 a.m. on January 2, 1971, Charles H. Cloud, Cleophus Bradford and John C. Pellum gathered at the home of Bradford to shoot dice and drink wine. After they had engaged in these activities for some time that morning, a disagreement led to a struggle concluded by the fatal shooting of Pellum. Seattle police officers were dispatched by radio to the Bradford residence and arrived in a short time. On their arrival, they entered the living room, saw Cloud and Bradford therein and Pellum lying on the floor. They observed blood on the floor, a revolver nearby and questioned Bradford and Cloud about the situation.

Neither Bradford nor Cloud were placed under arrest at the time of this general questioning. The officers had no reason then to assume that a homicide had taken place. However, though neither were so informed, they would not have been allowed to leave until the officers had questioned them. While one officer was talking to Bradford, who was sitting on the couch with Cloud, Cloud rose up and sponta-

neously said to Bradford, "Let me tell you something. There has been a murder in your house. These police officers are going to tell the Chief everything you are saying." When Cloud said this, further questioning ceased and all present were given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

The trial court at the termination of the hearing conducted pursuant to CrR 101.20W concluded the general questioning of Bradford and Cloud was reasonable inquiry by the police officers, that this questioning was not custodial interrogation and Miranda warnings were not required up to the time they were given. The statement made by Cloud was also found to have been voluntarily made and admissible.

The defendant was tried for murder in the second degree, convicted and appeals. He assigns error to allowing the officer to relate the quoted statement to the jury since it was made during interrogation before the defendant had been advised of his rights. He further contends that the use of the word "murder" in the statement constituted a legal opinion and another word should have been substituted to depict the event. Lastly, defendant claims that evidence that sometime before this shooting the deceased had pointed a gun at his own father during a quarrel should have been admitted as tending to show that the deceased was the aggressor in this instance.

■ We turn first to whether the statement made by the defendant was made voluntarily during investigation and is, therefore, admissible or whether it was made after custodial interrogation had begun but before the requisite Miranda warnings were given and, therefore, inadmissible. The problem is discussed in *State v. Creach*, 77 Wn.2d 194, 461 P.2d 329 (1969), which recognized that if questioning is noncoercive and does not contain the potentiality of compulsion inherent in in-custody interrogations but is conducted during a routine investigation without pressure being exerted by the examiner, it is permissible. Custodial

interrogation is defined by *Miranda* as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. It envisions that inquiry has acquired the taint of inquisition, that the satisfaction of curiosity has led to comprehension that a crime may have been committed by the answeror. When this corner is turned, the desire to understand becomes a hunt converging on the answeror. It is then, as a suspect, that he must be informed of his right to remain silent and to have a lawyer present. The threat to the suspect that he will incriminate himself having arisen, he is entitled to be warned of the threat. *State v. Haverty*, 3 Wn. App. 495, 475 P.2d 887 (1970); *State v. Jordan*, 3 Wn. App. 284, 475 P.2d 135 (1970); *State v. Gray*, 3 Wn. App. 146, 473 P.2d 189 (1970); *State v. Slack*, 3 Wn. App. 116, 472 P.2d 541 (1970); Annot., 10 A.L.R.3d 1054 (1966).

Probable cause to arrest a person without a warrant arises when there is a reasonable ground for suspicion, supported by circumstances within the knowledge of the arresting officer to warrant a cautious man in believing that the accused was guilty of a crime. *State v. Parker*, 79 Wn.2d 326, 485 P.2d 60 (1971); *State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970).

The circumstances prior to the arrest of the defendant do not meet that test. The officers knew only that the gun belonged to the defendant and that there were discrepancies in his story as he described the incident. This knowledge, while sufficient to put an observer to further inquiry, would not support a belief that the accused had committed a crime.

█ The statement also was admissible under *Miranda* as a voluntary statement. Even if the accused had been in custody, his voluntary statement would be admissible although he had not been informed of his peril. Instruction on one's constitutional rights is required to protect the citizen against incrimination being forced from him. When he proffers evidence of his own free will, it is admissible

and need not be stricken. *State v. Eldred,* 76 Wn.2d 443, 457 P.2d 540 (1969); *State v. Toliver,* 6 Wn. App. 531, 494 P.2d 514 (1972); *State v. Ratow,* 4 Wn. App. 321, 481 P.2d 20 (1971), *cert. denied,* 404 U.S. 944 (1972); *State v. Lister,* 2 Wn. App. 737, 469 P.2d 597 (1970).

Allowing the officer to testify to the quoted statement is also challenged on the basis that the word "murder" in the statement constituted a legal opinion, and defendant claims the court should have required the witness to substitute another word to relate the defendant's statement.

■ A witness may relate a declaration of an opinion or conclusion by a party if the party himself would have been permitted to state it as a witness. One must be qualified as an expert to relate an expert's opinion, and laymen may state opinions on matters on which they as lay people are qualified. 5 Meisenholder, Wash. Prac. §§ 342, 343, 351, 352, 353, 356, 357 (1965).

The fact that the admission made by a party is an opinion or conclusion does not prevent its use. *Snyder v. Schill,* 388 S.W.2d 208 (Tex. Civ. App. 1965); *Shepherd v. Mc-Ginnis,* 257 Iowa 35, 131 N.W.2d 475 (1964); *Southern Passenger Motor Lines, Inc. v. Burks,* 187 Va. 53, 46 S.E.2d 26 (1948); 4 J. Wigmore, Evidence § 1053 (3d ed. 1940); 31A C.J.S. *Evidence* § 272b (1964).

The Washington court has adopted with approval rule 401 of the Model Code of Evidence which allows a witness to testify to what he has perceived, whether he is an expert or not, in terms which include all relevant inferences even though they embrace ultimate issues to be decided by the trier of fact, unless the judge finds (a) that to draw such inferences would require expertise the witness does not possess, or (b) the witness can communicate what he has perceived without stating inferences and his use of inferences will be likely to mislead the trier of fact to the prejudice of the objecting party. *See Church v. West,* 75 Wn.2d 502, 452 P.2d 265 (1969); *McBroom v. Orner,* 64 Wn.2d 887, 395 P.2d 95 (1964); *Gerberg v. Crosby,* 52 Wn.2d 792, 329 P.2d 184 (1958); *State v. Wigley,* 5 Wn. App. 465,

488 P.2d 766 (1971); *Parris v. Johnson,* 3 Wn. App. 853, 479 P.2d 91 (1970).

In *Simonson v. Huff,* 124 Wash. 549, 555, 215 P. 49 (1923), the plaintiff was permitted to testify that the defendant admitted fault (a conclusion of law) when blamed for an accident since this was an admission against interest.

The quoted statement was a mixed statement of fact, opinion, and conclusion stated by a party and not the conclusion of a witness as to commission of the elements of a crime as forbidden by *State v. Chemeres,* 20 Wn.2d 712, 147 P.2d 815 (1944) and *State v. Trombley,* 132 Wash. 514, 232 P. 326 (1925).

It is hard to tell whether the term in the context used by the defendant described an act, expressed an opinion or stated a conclusion. In such a situation, the trial court has discretion to allow the mixed statement of fact, opinion or conclusion to be brought before the jury. *Church v. West, supra; State v. Alden,* 73 Wn.2d 360, 438 P.2d 620 (1968); *State v. Riggs,* 32 Wn.2d 281, 201 P.2d 219 (1949); *State v. Wigley, supra.*

The term "murder" while a term of art, *Blanton v. State,* 1 Wash. 265, 24 P. 439 (1890); 40 C.J.S. *Homicide* § 13 (1944), is also one of common use. It is a term which would be included in a lay opinion that would be understood by other lay people, subject to instruction from the court. To require the witness to substitute the word "shooting" for the word "murder" would have been farcical. A man lay dead on the floor with a pool of blood and a revolver nearby. Under such circumstances, we would not expect attention to be called to the obvious, nor should the jury be deprived of the impact of a true statement which added the dimension of criminal intent to the situation. Words should not be substituted into testimony, but witnesses should report out-of-court statements as stated originally by the party. It may be that situations could occur where a strong overriding consideration would exist and it would be appropriate to delete a sacrilegious, inflammatory, obscene or profane word and substitute a term which would convey

the same meaning without engendering outrage and prejudice. If such came about, the change should only eliminate a word which would serve no probative purpose but which, if allowed to remain, would impair the fair consideration of guilt or innocence. We do not pass on that situation as it is not present here. The statement was admissible as made by the defendant.

During the trial, a witness who had known the deceased for over a year was called by the defendant and asked about the reputation of the deceased in the community for violence and a quarrelsome nature. This was resisted and the jury retired. After discussion between the court and counsel, the jury returned and the witness testified that the deceased's reputation along these lines had been bad. Again in the absence of the jury, defense counsel offered to prove that the witness also had known the deceased's father, and the father had told him of a quarrel between the father and the deceased which arose when the son drew a gun on the father to retrieve a television set. This offer of proof did not reflect that this act of the deceased was known to the defendant. It was refused as hearsay.

When the reputation of a deceased for violence, turbulence and ferocity is bad and this is shown to have been known by the defendant at the time of the altercation this is admissible to show reason for apprehension and grounds for self-defense by the defendant. When these circumstances exist, it is a plausible inference that defensive action by the defendant with force sufficient to cause the death of the deceased was well founded. *Smith v. United States,* 161 U.S. 85, 40 L. Ed. 626, 16 S. Ct. 483 (1896); *State v. Moore,* 182 Wash. 111, 45 P.2d 605 (1935); *State v. Crawford,* 31 Wash. 260, 71 P. 1030 (1903); *State v. Ellis,* 30 Wash. 369, 70 P. 963 (1902); *State v. Smith,* 2 Wn. App. 769, 470 P.2d 214 (1970); 2 J. Wigmore, Evidence § 246 (3d ed. 1940).

If the deceased's reputation for violence was unknown to the defendant at the time of the affray, it is admissible nonetheless to corroborate a defendant's claim that the de-

ceased was the aggressor. Thus the deceased's reputation for violence can be admitted to assist the jury in evaluating the deceased's acts at the time of the homicide even if the defendant was unaware of this reputation. *Evans v. United States,* 277 F.2d 354, 1 A.L.R.3d 566 (D.C. Cir. 1960); *State v. Adamo,* 120 Wash. 268, 207 P. 7 (1922); 1 J. Wigmore, Evidence § 63 (3d ed. 1940).

■ The testimony excluded by the trial court concerned an individual act of violence uncommunicated to the defendant: An individual act does not establish a reputation and therefore was insufficient to characterize the deceased as a violent person. *State v. Adamo, supra* at 269 held:

> [A] defendant charged with homicide may show, by third persons, that they had previously had quarrels with the deceased, and show the conduct of the deceased on those occasions, if such prior occurrence or occurrences were made known to the defendant before the commission of the crime for which he is being tried, because such testimony tends to show the state of mind of the defendant at the time of the killing, and to indicate whether he, at that time, had reason to fear bodily harm. [Citations omitted.]
>
> . . .
>
> . . . In proving the character of the deceased, specific acts of violence may not be shown. Such is the rule in any kind of case where there is an effort to show character. However, where the person accused is defending, in whole or in part, on the ground that at the time of the homicide he believed, and had good reason to believe, that he was in danger of his life, or great bodily harm, he may, in addition to the character evidence, show specific acts of the deceased which are not too remote and of which he had knowledge at the time of the killing with which he is charged. But such acts of the deceased may not be shown unless it appears they were brought to the knowledge of the defendant before he committed the crime charged.

A recently performed single act of violence by the deceased may have been sufficient to engender fear in the mind of the defendant. If the defendant knew of such an act which was not too remote and would normally cause a

person to be apprehensive, evidence of the act and the defendant's knowledge of it should be allowed. The trial court properly refused the proffered evidence as hearsay and because it could not have caused fear in the defendant.

State v. Huff, 3 Wn. App. 632, 477 P.2d 22 (1970), relied on State v. Churchill, 52 Wash. 210, 216, 100 P. 309 (1909), both cases holding that the real issue is whether at the time the defendant killed the deceased he had reasonable ground to believe that he was in danger of death or great bodily harm. State v. Ellis, supra, reaches the same holding and did not allow acts of violence by the deceased of which the defendant was not aware to be introduced into evidence. 2 J. Wigmore, Evidence § 248 (3d ed. 1940); 40 Am. Jur. Homicide § 301-307 (1940).

The judgment is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.

Petition for rehearing denied September 1, 1972.

Review denied by Supreme Court October 12, 1972.