FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9: 54

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| STATE OF WASHINGTON, | No. 43692-2-II |
| --- | --- |
| Respondent, | |
| v. | |
| SYLVIO ALBERT BRAVETTI, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Sylvio Bravetti appeals his conviction for second degree assault (domestic violence) for pointing a gun at his adult son Michael Bravetti. He argues that the trial court erred when it excluded evidence of Michael's[1] violent acts because the evidence was necessary to establish Sylvio's state of mind at the time of the assault. Sylvio also argues that his counsel was ineffective because counsel failed to object and to introduce evidence. We hold that the trial court properly excluded evidence of Michael's violent acts that were not directed at Sylvio and that took place when Michael was a child or teenager because this evidence was largely irrelevant and any probative value was outweighed by unfair prejudice. Additionally, counsel was not ineffective because the failure to object was a trial strategy and the failure to offer evidence did not affect the trial's outcome. We affirm.

## FACTS

On October 3, 2011, Michael and Michael's six-year-old son were living with Sylvio and Sylvio's wife, Kathy Bravetti. That morning, Michael was having trouble getting his son ready

---

[1] The defendant, the victim, and many of the witnesses share the same last name. For clarity, we refer to them by their first names.

for school. His son was crying and refusing to get dressed, so Michael yelled at and spanked him. Sylvio and Kathy overheard the interaction and became concerned. After Michael left, Sylvio called Michael's mother, Ruth Bravetti, and told her he was considering calling Child Protective Services (CPS) about Michael's treatment of his son. When Michael arrived at Ruth's later that morning, Ruth told him that Sylvio was concerned and was considering calling CPS. Michael testified that he was upset that Sylvio would call CPS because Sylvio had hit Michael when he was a child. Ruth testified that Michael said he was going to "beat his father's face to a pulp, make him bleed, going to kill him." 2 Report of Proceedings (RP) at 239. Michael denied making any threats against Sylvio.

After Michael left, Ruth called Sylvio to warn him that Michael was upset and that he had threatened to hurt Sylvio. Based on Ruth's warning, Sylvio retrieved a gun from his desk and placed it under a folder on the kitchen table. He also called Ruth back and asked her to listen on the line while he talked to Michael.

Sylvio was sitting in the kitchen when Michael returned. Michael and Sylvio agree that a confrontation occurred, but they disagree as to what happened during the confrontation. Michael testified that he and Sylvio talked about Michael's treatment of his son, then Michael stepped closer to Sylvio, tapped his chin, and asked him to admit that he had hit Michael when Michael was young. Sylvio then pulled out a gun and pointed it in Michael's face. Michael grabbed the gun barrel and the two of them wrestled over the gun, eventually ending up on the floor. After they fell to the floor, Sylvio agreed to release the magazine and Michael put the bullets in his pocket.

2

Sylvio testified that Michael entered his house and began yelling in his face. Michael then slapped Sylvio, punched him in the chest, and poked him. Sylvio said he drew the gun at that point because he was afraid of Michael and, because of his physical condition, he could not otherwise stop Michael's assault. Sylvio agreed that Michael grabbed the gun and that the two fought over it until Sylvio released the magazine. Both men agreed that Ruth, who was listening to the scuffle over the phone, called the police on her other line and that the police arrived at Sylvio's shortly thereafter.

The State charged Sylvio with first degree assault (domestic violence) or, in the alternative, second degree assault (domestic violence), both while armed with a deadly weapon. Sylvio stated that he would be raising self defense at trial.

The State filed motions in limine to exclude evidence of Michael's 2005 arrest for malicious mischief and assault (domestic violence) and evidence of Michael's reputation within the family. The State also moved to admit evidence that Sylvio had hit Michael with a back scratcher when Michael was a child. It argued that this evidence was necessary to explain Michael's statements to Ruth on the morning of the assault.

Sylvio filed a motion to admit evidence of his state of mind on October 3. Specifically, he wanted to introduce evidence that Michael (1) bit and scratched Ruth when he was a teenager, (2) assaulted another child and his younger brother when he was a child, (3) takes a certain defensive body posture during arguments, (4) invades others' personal space, (5) previously argued with Sylvio in the kitchen and chased him around the kitchen island, (6) allegedly assaulted former girl friends, (7) taunted Sylvio, (8) threatened Ruth, and (9) attempted to hit Ruth with a baseball bat. Sylvio also moved to admit evidence from court pleadings in Michael's custody case and evidence of Michael's reputation for violence.

The trial court reviewed both parties' proffered evidence and concluded that, while it was "not possible" to inform the jury about everything Sylvio knew about Michael, it attempted to allow enough family history in to "put this incident in context." RP (May 9, 2012) at 16. The trial court determined that the following evidence would be admissible at trial: (1) evidence of Michael's posture during arguments, (2) evidence that Michael invades others' personal space, (3) evidence that Michael and Sylvio previously argued in the kitchen around the island, (4) evidence that Sylvio used corporeal punishment against Michael (subject to a limiting instruction), (5) evidence that Michael taunted Sylvio, (6) evidence of Michael's reputation within the community, and (7) specific instances that show aspects of Michael's character. The court reserved ruling on the admissibility of evidence that Michael attempted to hit Ruth with a baseball bat.

The trial court excluded evidence of (1) Michael's 2005 arrest because the incident did not suggest danger to Sylvio and the danger of unfair prejudice outweighed the probative value, (2) Michael's reputation in the family, (3) Michael scratching or biting Ruth because the date of occurrence was vague and the danger of unfair prejudice outweighed the probative value, (4) Michael's assault of another child and his brother because this evidence was irrelevant and the danger of unfair prejudice outweighed the probative value, (5) Michael's alleged assaults against former girl friends because the evidence was highly prejudicial and not the type of danger that would suggest harm to Sylvio, (6) Michael's threats against Ruth because the evidence was not probative, (7) pleadings from Michael's custody case because the danger of unfair prejudice outweighed the probative value.

4

At trial, Michael testified about his relationship with Sylvio. He testified that Sylvio used to hit him and chase him through the house. The trial court gave a limiting instruction after this testimony, telling the jury that it could consider this evidence only for the purposes of understanding Michael's comments to Ruth on October 3 and the prior physical incidents between Michael and Sylvio. Michael also testified that he hit Sylvio once in the garage when Michael was about 16.

Sylvio called several witnesses to testify about Michael's character and his interactions with Sylvio. Ruth testified about her conversation with Michael on October 3, stating that Michael was very angry and that she felt frightened. She also testified that it sounded like Michael was "beating up" Sylvio while she listened on the phone on October 3. 2 RP at 247. Kathy testified that she was afraid of Michael and that he was "very angry" and disrespectful toward both her and Sylvio. 2 RP at 272. She also testified about Michael and Sylvio's previous argument around the kitchen island. Sylvio's son Tony testified about Michael hitting Sylvio in the garage when Michael was a teenager. Tony testified that Michael was "extremely angry" and was hitting his father forcefully and that Tony was scared for Sylvio. 2 RP at 293. Sylvio also testified about the incident in the garage, and he attempted to introduce evidence that, after the garage fight, Michael said, "Just you wait. I'm going to get you with a bat while you are sleeping." 2 RP at 294. The trial court excluded the evidence under ER 403, concluding that the relevance was slight and the prejudice great. Sylvio additionally testified about several recent instances where Michael was verbally abusive toward him. Sylvio did not try to introduce evidence that Michael attempted to hit Ruth with a bat.

The trial court instructed the jury on the lawful use of force. The jury found Sylvio guilty of second degree assault (domestic violence) while armed with a firearm. The trial court sentenced him to 42 months of confinement. Sylvio appeals.

ANALYSIS

I.    STATE OF MIND EVIDENCE

First, Sylvio argues that the trial court erred when it excluded evidence of Michael's past violent acts. He contends that this evidence was necessary to establish his state of mind at the time of the assault. Because the trial court reasonably excluded evidence that was irrelevant or unfairly prejudicial, we affirm.

A trial court has discretion to admit or exclude evidence. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). We will not overturn that decision unless it is manifestly unreasonable or based on untenable grounds or reasons. *Neal*, 144 Wn.2d at 609 (quoting *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

A.    Hearsay

Sylvio first contends that the trial court erred when it excluded evidence based on the hearsay rule. Most of the evidence that Sylvio argues was improperly excluded was excluded based on relevance and unfair prejudice and not hearsay. The only evidence that the trial court excluded as hearsay was Sylvio's testimony about what Ruth told him Michael said on the day of the assault. But, even if the trial court erred when it excluded Sylvio's testimony, the error was harmless because this evidence was admitted through Ruth's testimony. Ruth testified that Michael said he was going to "beat his father's face to a pulp, make him bleed, going to kill him." 2 RP at 239. She also testified that she called Sylvio and told him what Michael had said. Sylvio testified that he received a call from Ruth and that he learned that "[he] could probably

6

expect a good beating," which caused him to become "fearful" after the conversation. 2 RP at 333. Accordingly, the jury had evidence that Sylvio knew about Michael's threat against him at the time of the assault and that the threat made him fearful.

### B.     ER 402 and 403

Sylvio next argues that the trial court erred when it excluded evidence under ER 402 and 403. Generally, character evidence is inadmissible to prove conformity on a particular occasion. ER 404(a). But there is an exception for evidence of the victim's character offered by the accused. ER 404(a)(2). In a case where the defendant asserts self defense, evidence of the victim's violent character may be relevant to show the defendant's state of mind. *State v. Callahan*, 87 Wn. App. 925, 934, 943 P.2d 676 (1997); State *v. Dyson*, 90 Wn. App. 433, 438-39, 952 P.2d 1097 (1997) (to establish self defense, the defendant must produce evidence showing he had a good faith belief in the necessity of force and this belief was reasonable). The defendant may offer evidence of the victim's violent acts only if the acts are not too remote and if the defendant has knowledge of them at the time of the assault. *State v. Cloud*, 7 Wn. App. 211, 218, 498 P.2d 907 (1972) (quoting *State v. Adamo*, 120 Wash. 268, 269, 207 P. 7 (1922)). Evidence offered by a defendant to support a self-defense theory must be relevant. *State v. Bell*, 60 Wn. App. 561, 564, 805 P.2d 815 (1991) (citing ER 402). And even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 403.

Sylvio contends that the trial court misapplied ER 403 because it failed to determine whether the prejudice was actually unfair and whether it substantially outweighed the probative value. Contrary to Sylvio's assertions, the record shows that the trial court considered whether the evidence of Michael's past actions was unfairly prejudicial.

First, Sylvio argues that the trial court never used the word "unfair" in its rulings. Appellant's Br. at 23. But the trial court specifically used the words "unfair prejudice" in its written conclusions of law excluding evidence. CP at 253-54. Next, Sylvio appears to argue that the trial court excluded evidence when there was any prejudice and not just unfair prejudice. But it is clear from the rulings that the trial court recognized that most of the evidence was prejudicial and excluded only the evidence that was unfairly so. For example, the trial court admitted evidence of the recent kitchen island fight between Michael and Sylvio because it noted that the evidence was only "somewhat prejudicial" when compared to its probative value but it excluded evidence that a teenaged Michael bit or scratched Ruth because it was "unfair[ly] prejudic[ial]" when compared to its probative value. RP (May 9, 2012) at 11; CP at 253.

Sylvio also focuses on the trial court's exclusion of Michael's statements after the fight with Sylvio in the garage. But the trial court stated that the relevance of these statements was slight because the event took place 20 years ago and that there was a danger of "[u]nfair prejudice, confusion of the issues, or misleading the jury." 2 RP at 297. The trial court applied the correct standard and came to a reasonable conclusion given the facts.

Sylvio next argues that the trial court improperly limited the admission of evidence because it required the evidence to be (1) based on Sylvio's personal knowledge and (2) not too remote in time. First, the trial court did not require that the evidence of Michael's prior acts be based on Sylvio's personal knowledge. Rather, it concluded that evidence of Michael's past assaults and threats against other people—including his 2005 arrest, his alleged assaults against former girl friends, and his alleged assault of another child on the bus—was irrelevant to Sylvio's state of mind at the time of the present assault. This conclusion is reasonable considering the evidence at issue. Sylvio was not the target of the excluded threats and assaults,

and he fails to show how Michael's fights with other children or former girl friends suggested that he would harm his father. Additionally, many of the incidents took place years ago when Michael was a child or teenager. It was reasonable for the trial court to exclude this evidence as irrelevant.

Second, the trial court did not err when it excluded evidence that was too remote in time, such as fights and threats from his childhood and teenage years. Washington case law limits evidence of the victim's violent character to that which is not too remote in time. *See Cloud*, 7 Wn. App. at 218. This limitation is logical because evidence must be relevant and a victim's actions 20 years before an assault are usually not relevant to the circumstances of a present assault. Therefore, the trial court properly recognized that state of mind evidence is limited by relevance and remoteness and it properly applied those principles here when it excluded evidence from Michael's childhood and teenage years.

C.    Open Door Doctrine

Finally, Sylvio argues that the State opened the door to evidence that Michael had abused others when it elicited testimony from Michael that Sylvio had abused him as a child. The open door doctrine does not apply in this case because evidence that Michael had abused others is not necessary to explain, clarify, or contradict evidence that Sylvio had abused Michael. Additionally, evidence that Michael had abused others is not relevant to an issue at trial.

"[O]nce a party has raised a material issue, the opposing party is permitted to explain, clarify, or contradict the evidence." *State v. Berg*, 147 Wn. App. 923, 939, 198 P.3d 529 (2008)

*abrogated on other grounds by State v. Mutch,* 171 Wn.2d 646, 254 P.3d 803 (2011). This means that otherwise inadmissible evidence may be admissible if a party first "opens the door" and the inadmissible evidence is relevant to an issue at trial. *State v. Stockton,* 91 Wn. App. 35, 40, 955 P.2d 805 (1998).

Here, Sylvio fails to show how evidence that Michael had abused others explains, clarifies, or contradicts evidence that Sylvio had abused Michael when Michael was a child. At trial, after Michael testified that Sylvio had hit him as a child, Sylvio argued that he should be able to present evidence of his relationship with Michael when Michael was younger. But the trial court allowed Sylvio to present evidence of Michael and Sylvio's relationship; it limited only evidence regarding Michael's relationships with others.[2] Sylvio failed to offer additional evidence of Michael and Sylvio's relationship or explain how evidence of Michael's relationships with others relates to Sylvio allegedly hitting Michael as a child. Further, as discussed above, evidence of Michael's abuse of others is not relevant to an issue at trial because many of the incidents were remote in time and none of the incidents suggested that Michael would harm his father.

The trial court carefully considered the character evidence offered by both sides and reasonably excluded evidence that was remote in time and included parties other than Michael and Sylvio and admitted evidence of interactions between Michael and Sylvio. Because this decision was reasonable, we affirm.

---

[2] The trial court did, however, exclude Michael's statement to Sylvio 20 years ago that he was "going to get [Sylvio] with a bat while [he was] sleeping." 2 RP at 294. But the trial court admitted evidence of the fight that preceded the statement and it reasonably concluded that the comment was irrelevant and unfairly prejudicial.

10

## II.   INEFFECTIVE ASSISTANCE

Next, Sylvio argues that his counsel was ineffective because counsel failed to object and failed to introduce evidence. But counsel did object to some of the evidence Michael complains about, and counsel's failure to object to the remaining evidence can be characterized as trial strategy. Further, counsel's failure to introduce evidence was not prejudicial.

Under the *Strickland*[3] test, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Performance is deficient only if it "[falls] below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Performance is not deficient if it is based on legitimate trial strategy or tactics. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). To establish prejudice, the defendant must show a reasonable probability that the deficient performance affected the trial's outcome. *Thomas*, 109 Wn.2d at 226 (quoting *Strickland*, 466 U.S. at 694). The defendant's failure to prove either prong ends our inquiry. *Hendrickson*, 129 Wn.2d at 78.

Sylvio first argues that counsel was ineffective because counsel failed to object to evidence that (1) Sylvio had abused Michael, (2) Kathy had cheated on her previous husband and (3) Kathy obtained a protection order against Michael. But Sylvio's counsel did object to evidence that Sylvio had abused Michael and evidence that Kathy had cheated on her husband. The trial court ruled during pretrial proceedings that limited evidence that Sylvio had abused Michael would be admissible. Sylvio's counsel objected to the trial court's ruling multiple times throughout the trial. During cross-examination, the State asked Kathy if she had cheated on her husband. Sylvio's counsel objected and the trial court sustained the objection. Thus, counsel's

---

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

performance was not deficient because counsel objected to evidence that Sylvio had abused Michael and evidence that Kathy had cheated on her husband.

Additionally, counsel's decision to elicit testimony from Kathy regarding the restraining order and to not object to further questioning concerning this issue was a legitimate trial strategy. Kathy testified that she had sought a restraining order because she was afraid of Michael. This evidence supports Sylvio's theory at trial that Michael was dangerous and that Sylvio's use of force on October 3 was reasonable.[4] Counsel was not ineffective for failing to object.

Sylvio next argues that counsel was ineffective because counsel failed to offer evidence supporting his motions in limine. Even assuming that this was deficient performance, Sylvio fails to show that this performance affected the outcome of the trial.

The trial court excluded some of Sylvio's evidence regarding Michael's past violent acts, but none of the evidence was excluded for lack of proof. Instead, the trial court excluded the evidence because it was irrelevant or the probative value was outweighed by unfair prejudice. Sylvio fails to show how additional evidence about these instances would have affected the outcome at trial. He does not argue that the trial court misconstrued or lacked material facts;[5] he instead argues that the trial court erred in its legal conclusions. Accordingly, he cannot show that additional evidence would have changed the outcome if offered.

---

[4] In his heading and assignment of error, Sylvio states that counsel should have objected to evidence that the restraining order was *dismissed*, but in his very brief argument regarding this issue he states only that counsel should have objected to evidence that Kathy *obtained* the order. We focus on the issues in the argument rather than those in the heading. Additionally, Sylvio argues that the State emphasized the protection order in closing argument. But the State mentioned the order only once and Sylvio fails to provide any grounds on which counsel should have objected to this argument.

[5] Sylvio does not assign error to any of the trial court's findings of fact; thus, they are verities on appeal. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005).

43692-2-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Hunt, J.

Worswick, C.J.

13